## BEDFORD MABRY *v.* THE STATE.

1. JUROR. *Competency.* *Constitution* 1890, §§ 244, 264. *Ability to read.*

   Since § 264, constitution 1890, requires that a juror be able to read and write and also be a qualified elector, and since, to be an elector under § 244, he must be able to read *any section of the constitution,* the words "able to read," in § 264, must be held to mean able to read any section of the constitution.

2. SAME. *Code* 1892, § 2354. *Constitutionality.*

   One may be duly registered, and yet not a qualified elector. Therefore § 2354, code 1892, providing that a "duly registered voter, able to read and write," shall be competent as a juror, is not in accordance with § 264, constitution 1890, under which one to be competent as a juror must be a qualified elector.

3. SAME. *Partiality.* *Fixed opinion.*

   One who has heard parts of a former trial, who declares that he has a fixed and definite opinion, and will not say positively that he could try the accused as though he had no opinion, is not a competent juror.

4. PRACTICE. *Exclusion of juror.* *Discretion.*

   If any doubt arises as to the competency of a juror, he should be excluded. The court has the discretion to do this at any time before evidence is submitted.

5. SAME. *Supreme court* *Multitudinous instructions.* *Immaterial errors.*

   Where six, eight or ten instructions have been given for a party, this court will not consider errors assigned for the refusal of others, unless it shall appear that the jury was not furnished a sufficient guide for the proper determination of the case. The trial court has power to limit the

number of instructions within reasonable bounds, and this should be done, with proper caution to avoid injustice.

6. INSTRUCTION. *Testimony of deceased witness. Weight.*

An instruction which tells the jury that if it believes that the reported testimony of deceased witnesses on a former trial of the accused has been correctly proved, it should be given the same consideration as if the witnesses had testified before the jury, is objectionable.

7. EVIDENCE. *Homicide. Acts and statements of deceased. Incompetency.*

On a murder trial, where it is shown that there was enmity between accused and deceased, and that the former knew the latter had made threats against him, and had purchased and carried a gun, testimony for the state as to what the deceased said or did shortly before the killing, not in the presence of the accused, as to selling or disposing of the gun, is incompetent.

8. SAME. *Relations with wife of deceased.*

On such trial, though it appears that enmity existed between the parties because of alleged improper relations between accused and the wife of deceased, evidence of the wife's infidelity, of her mistreatment by her husband, and of what passed between them not in the presence of the accused, is incompetent.

9. SAME. *Irrelevancy. Failure to object in time.*

But in such case, where the state offers testimony tending to show criminal relations between the accused and the wife of the deceased prior to the killing, and it is not objected to when introduced, but only after several witnesses are examined, it is too late for the defendant, after thus experimenting, to raise the objection on motion to exclude.

FROM the circuit court of Holmes county.

HON. C. H. CAMPBELL, Judge.

Appellant, Mabry, was convicted in the court below of the murder of Frank Rials. On the trial certain questions were raised as to the competency of jurors, a sufficient statement as to which appears in the opinion.

The eighth instruction for the state, condemned by this court, is as follows: "The court instructs the jury that if they believe from the evidence that Mrs. Hettie Baughn and John S. Horton testified on the committal trial of Bedford Mabry for the same offense for which he is now on trial, and

that the substance of their evidence, then given, has been correctly proven in this case, then the jury should give the same consideration to such evidence, so proven, as if Mrs. Baughn and John S. Horton had appeared and testified as witnesses before this jury on this trial."

The witnesses referred to had died after testifying on the preliminary trial, and the substance of their testimony, as written down, was introduced by the state.

The defendant relied upon self-defense.

There was proof of animosity existing between Rials and Mabry, because of alleged improper relations between Mabry and the wife of Rials, and there was testimony tending to show that the men had made threats concerning each other. It also appeared that Rials provided himself with a gun and contemplated taking the life of Mabry for the alleged intimacy with his wife, all of which was known to Mabry. Then the state offered evidence to show that, afterwards, Rials made up his mind to abandon his wife and leave the country, and, in view of this, had endeavored to sell or dispose of his gun and other effects, saying to others that he intended to leave the state. The defendant was not present when this occurred, and knew nothing of it. This was objected to, but the objection was overruled, and the evidence admitted.

The testimony of Mrs. Seitzler, on behalf of the state, referred to in the opinion, was to the effect that, a short while before the killing, she and Mrs. Rials spent the night at the house of her cousin, one White; that Mabry also spent the night there, and that, during the night, Mrs. Rials got up from the bed, in which she was sleeping with the witness, Mrs. Seitzler, and went to the bed of Mabry, where she remained a short while, and that this was afterwards communicated to Rials by Mrs. Seitzler, who was his sister. There was other evidence concerning the alleged infidelity of the wife of deceased, and of his treatment of her. The state sought to show that there were improper relations between

her and Mabry, and the defendant offered evidence to show that Rials had quarreled with and mistreated her for some time prior to his death. As stated in the opinion, a part of the testimony as to these matters was excluded and a part admitted.

In view of the opinion, it is not necessary to set out the numerous instructions, or to give the argument of counsel thereon.

Defendant was convicted and sentenced to imprisonment for life. Motion for new trial overruled, hence this appeal. The opinion contains such further statement of the case as is necessary to an understanding of the questions decided.

*Hooker & Wilson*, for appellant.

1. The juror, Shoemaker, was incompetent. Code 1892, § 2354. He was only able to write his own name and to read that and the name of the sheriff.

2. Hyman, who had heard part of the former trial, and who had a fixed opinion, was incompetent. *White* v. *State,* 52 Miss., 216.

It is the duty of the court to see that an impartial jury is impaneled. 9 Smed. & M., 118 ; 32 Miss., 391.

3. It was error to admit evidence on behalf of the state that Rials had made efforts to dispose of his gun. Mabry knew he had a gun, and could not regard its being carried as casual. He was not present, and was not informed of the effort or purpose to sell the same.

4. The state made the chastity of Rials' wife and her alleged intimacy with Mabry an issue in the case, yet the court refused to admit evidence, intended to meet this, as showing Rials' mistreatment of his wife. This had the effect to prejudice defendant's case. The truth is, defendant was indicted for murder and tried for adultery.

5. The eighth instruction for the state should not have been given. It was on the weight of evidence. The court had no right to instruct that the reported testimony of the

deceased witnesses should have the same force and effect as if they had testified before the jury.

(Counsel also argued other questions as to the instructions, but as they are passed upon as a whole, and not separately, the argument is not given.)

*Frank Johnston,* attorney-general, for the state.

1. Large discretion is allowed the trial court in the selection of jurors. *State* v. *Head,* 44 Miss., 731.

There is no fixed rule as to the test of impartiality. 13 Smed. & M., 189.

The jurors, Shoemaker and Hyman, both stated on their *voir dire* that they could try the case impartially. They were both competent. Code 1880, § 3072; Code 1892, § 2355.

The judge decided that Shoemaker was competent, that he could read and write, and the finding should not be disturbed. Besides, the lack of qualification will not vitiate a verdict. Constitution 1890, § 264; Code 1892, § 2354.

The district attorney offered to excuse Shoemaker after he was accepted. So, if there was error, it was not prejudicial.

2. It was proper to admit the evidence that, shortly before the killing, deceased offered to sell his gun. This was a verbal act, showing that he did not anticipate a difficulty with the defendant, and that the latter was the aggressor.

3. The court properly excluded the evidence offered to show that Rials quarreled with and mistreated his wife.

4. It was competent to show that Mabry was at White's, and had illicit relations with Mrs. Rials. There was no objection to this testimony at the time it was admitted, and it was too late to object after experimenting with the court.

5. The law was fully and fairly stated to the jury in the numerous instructions, and the verdict is amply sustained by the evidence.

Argued orally by *G. A. Wilson,* for appellant, and the attorney-general, for the state.

CAMPBELL, C. J., delivered the opinion of the court.

The juror, Shoemaker, did not come up to the constitutional requirement. He was not a qualified juror, for he could not write and read any section of the constitution. He was a registered voter, it is true, but that does not satisfy the constitution, which declares that "no person shall be a grand or petit juror unless a qualified elector, and able to read and write" (§ 264); and by § 244 it provides that every elector shall "be able to read any section of the constitution of this state," thereby prescribing the standard of capacity to read, so that it is not left uncertain what is meant by "able to read," as used in § 264. Section 2354, code 1892, in prescribing who are competent jurors, makes a "duly registered" voter the equivalent of a qualified elector, and is in this unconstitutional, as we have shown in several decisions during this term, since one may be duly registered, and not be a qualified elector.

It is unnecessary now to decide the effect of the offer of the district attorney to the counsel of the defendant to excuse Shoemaker after he had been seated in the jury box. If any doubt arose as to the competency of the juror, the court should have set him aside, as it had full power to do without error, at any time before evidence was submitted.

The juror, Hyman, who had heard parts of the former trials of the case, and declared he had a "fixed and definite opinion," and would not say positively that he could try the case as though he had no opinion, did not meet the requirement of an impartial juror. No doubt the judge found difficulty in securing jurors, in view of the habit of men to come near to perjury, and sometimes perhaps commit it, to escape the horrid service as jurors in capital cases, and concluded, as this man did not know whether he had conscientious scruples as to capital punishment or not, that his "fixed and definite" opinion did not stand in the way of his being impartial, but it is the safer course always to reject one who swears he has such an opinion.

The eighth instruction for the state is objectionable, as telling the jury that the reported evidence of the deceased witnesses was entitled to the same consideration as if they had testified before the jury.

The first thirty-two instructions asked by the accused were given, and the next seven were refused. We draw the line far this side of thirty-two instructions on one side. Life is too short and time too precious to be expended in dealing with fifty-three instructions, or any such number in one case, and, as all terrestrial things have limits, we have determined to announce that, where the court in any case has given the first six, eight, or ten instructions asked by a party, and refused any more, we will not consider errors assigned as to such refused instructions, unless it shall appear that the jury was not furnished a sufficient guide for their proper determination of the case. The courts have just as much right to limit instructions to a proper number as they have to limit argument within proper bounds, and it should be done, with proper caution to avoid injustice, and they will be sustained in this course by this court by its refusal to consider errors predicated of the refusal of the trial courts to grant an unnecessary and unreasonable number of instructions, whereby jurors are confused often, and judges entrapped into error after being wearied with attention to the many instructions preceding, and much valuable time is wasted by counsel and judges in disposing of the case.

All the testimony of what Rials said and did as to selling or disposing of his gun was incompetent.

The testimony of the woman, Seitzler, about the night occurrence at White's, ought not to have been admitted as evidence, but the record does not show any objection to it when offered and given, and it was too late to raise an objection by motion to exclude after having experimented with it in the way shown.

The supposed infidelity of the wife of Rials, and his quarrels with her, and what he said to her or did to her in Ar-

kansas or Mississippi had no proper place in the case. The accused was on trial for murder, and all the miserable " stuff " about the wife, and her husband's treatment of her, should have been excluded, as much of it was. The only error was in not excluding all of it. What Rials said to Mabry, and what they each said and did to each other, and any declarations evincive of the purpose of one towards the other, within the well-known legal rules, were admissible, but it was not proper to try Rials' wife or Mabry for illicit intercourse, for that was not the issue joined.

*Reversed, and remanded for a new trial.*