CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MISSISSIPPI

AT THE

## MARCH TERM, 1920,

YAZOO & M. V. R. R. Co. *v.* DEES.

[83 South. 613, In Banc. No. 20945.]

1. MASTER AND SERVANT. *Ordinary risks assumed Federal Employer's Liability Act. Risks not assumed.*

    A servant by merely entering the service of the master assumes the ordinary risks of the service; and if he is injured solely because of them he cannot recover, but at common law, and under the Federal Employer's Liability Act (U. S. Comp. St.. sections 8657-8665) risks created by the master's negligence are not assumed by the servant unless with an actual or constructive knowledge thereof and appreciation of the danger therefrom he voluntarily enters or continues in the employment of the master.

2. MASTER AND SERVANT. *Employees within Federal Employer's Liability Act assumed risks of switch light going out without fault, but not for lack of oil.*

    Under the Federal Employer's Liability Act (U. S. Comp. St., section 18657-8665), a railroad yard employee assumed the risk of the light on the switch stand over which he stumbled going out without fault on the employer's part, but not the risk arising from the failure of the employee in charge thereof to keep it filled with oil, unless he had actual or constructive knowledge before the injury that the light was out.

3. MASTER AND SERVANT. *Railroad charged with duty to keep switch lights burning.*

    Although lights were primarily placed on railway switch stands to show whether the switches were open or closed their presence was an invitation to employees to use them for the purpose of

439

locating and avoiding the switch stands and it was the employer's duty to exercise reasonable care to keep them burning for this purpose.

4. MASTER AND SERVANT. *Risk from employer's negligence not assumed under Federal Employers Liability Act.*

Under the Federal Employer's Liability Act (U. S. Comp. St., sections 8657-8665) an employee does not assume a risk created by his employer's négligence merely because he had as good an opportunity as the employer of knowing of its existence.

5. TRIAL. *Refusal of instruction the substance of which has already been given.*

It was not error to refuse an instruction the substance of which had already been given in other instructions.

6. MASTER AND SERVANT. *Servant did not assume risk under Federal Employer's Liability Act though he knew location of unlighted switch.*

Under the Federal Employer's Liability Act (U. S. Comp. St., sections 8657-8665) a railroad employee stumbling over an unlighted stand did not assume the risk though he had worked in the yards for years and knew where the switch stand was located, where he fell over the switch in the dark, not knowing that he was in its vicinity.

7. TRIAL. *Limit to instructions.*

Trial courts are required and should only grant instructions sufficient in number and character, to guide the jury in determining the issues involved in the case on trial and they have the right to limit the number of instructions to be considered by them accordingly, but this should not be done arbitrarily.

8. DAMAGE. *Amount.*

For an injury causing a double hernia, permanent unless relieved by a dangerous operation which might not be successful, and causing pain at intervals and compelling plaintiff to wear a truss and materially reducing his capacity for work, a verdict by the jury for $15,000 was not excessive.

APPEAL from the circuit court of Warren county.

HON. E. L. BRIEN, Judge.

Suit by John C. Dees against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Charles N. Burch, H. D. Minor* and *Hirsh, Dent & Landau,* for appellant.

The decisions of the supreme court of the United States applicable to the facts of this case, control. ''Whenever Congress enacts statutes pursuant to its power under the commerce clause, such laws, when enforced in both state and federal courts must be construed in the light of federal decisions and applicable common-law principles as interpreted and applied in the federal courts to the exclusion of common-law rules different therefrom enforced in state courts. It therefore follows that even in actions under the federal act prosecuted in state courts the decisions of the state courts do not govern in determining the application of the doctrine of assumption of risk if the rules therein adopted differ from those applied in the federal courts.'' 1 Roberts' Federal Liabilities of Carriers, sec. 557; *Southern R. Co.* v. *Gray,* 241 U. S. 333.

3. Plaintiffs assumed the ordinary risks incident to his employment. Plaintiff assumes the ordinary risks normally incident to his occupation whether he was actually aware of them or not.'' 1 Robert Federal Liabilities of Carriers, sec. 558; *Seaboard Air Line Railway* v. *Horton,* 233 U. S. 492-504.

4. Plaintiff assumed the extraordinary risks due to negligence of employer and fellow employees when known and appreciated by him. ''Under the federal Employer's Liability Act, except in the cases specified in section 4, the employee assumes extraordinary risks incident to his employment, and risks due to negligence of employer and fellow employees, when obvious or fully known and appreciated by him.'' *Boldt* v. *Pennsylvania Railroad Co.,* 245 U. S. 441.

Even, therefore, if the lamp tender had been incompetent (the fact that he was competent was established in this case), his failure to keep these lamps lighted, admittedly known to plaintiff, would defeat any action to recover for injury, sustained by reason of any defective lighting; but it is also established in this action that the lighting was in no respect defective, and, on the contrary, it was shown that the lights in the best lamps are occasionally extinguished.

5. Master not an insurer of the safety of the employee and he must have actual or constructive notice of a defect before plaintiff can recover. "The master does not insure or guarantee that the machinery or appliances are in a safe and suitable condition, and where defects exist, the master is not held to be guilty of negligence unless it appears that he knew, or by the exercise of ordinary care, could have known that such machinery and appliance had become defective and were in an unsafe condition." In other words, it must appear in order to entitle the plaintiff to recover, that the master had either actual or constructive notice of the defect alleged to have caused the injury, and these facts must be established by legal evidence. *Washington, etc., Railway Co.* v. *McDade,* 135 U. S. 554, 10 Sup. Ct. 1044, 34 L. Ed. 205; *Norfolk & Western Ry. Co.* v. *Reed,* 167 Fed. 16, 92 C. C. A. 78; *Virginia, etc., Wheel Co.* v. *Chalkley,* 98 Va. 62, 34 S. E. 676." *Barett* v. *Virginia Ry. Co.* 244 Fed. 399; *Hope* v. *Railroad Company,* 98 Miss. 829; *Mississippi Central R. R. Co.* v. *Bennett,* 111 Miss. 163; *Lumber Co.* v. *Garner,* 117 Miss. 814; *Seaboard Air Line Railway* -v. *Horton,* 233 U. S. 492, 501; *Yazoo & Mississippi Valley Railroad Company* v. *Mullins, administratrix* (April 21, 1919); United States Supreme Court Advance Opinions, No. 13, p 433, Lawyers Co-op. Publishing Company.

6. Master only required to see that the instrumentalities are reasonably safe, for the functions designated. "A general principle which is frequently conclusive against the servant's right to maintain an action is that the master's duty in respect to his instrumentalities is restricted to seeing that they are reasonably safe for the performance of the functions for which they are designed."

"It is universally agreed therefore, that an employer is not liable where the servant's injury was not caused by any defect in the appliance which affected its safety when it was used in the ordinary manner and for the purposes for which it was intended." 3 LaBatt on Master & Servant (2 Ed.), section 921.

The master is not obligated to keep a building in a safe condition at every moment of the work. The obligation of a master to provide reasonably safe places and structures for his servants to work upon does not obligate him to keep a building, which they are employed in erecting, in a safe condition at every moment of their work, so far as its safety depends on the due performance of that work by them and their fellow servants." *Armour* v. *Hahn,* 111 U. S. 313.

8. An employee voluntarily accepting employment with knowledge of conditions, and without obligation, even assumes the risks of insufficient lighting. "A carpenter assumed the risk of injury arising from insufficient lighting where he was required to work, where he entered upon the work without objection. *Cincinnati, N. O. & T. P. Ry. Co.* v. *Skinner,* 136 S. W. 644. In this case it is established by the evidence that the lighting was sufficient.

9. Plaintiff knew the condition, and appreciated the danger, therefore assumed the risk, and cannot recover. "An experienced employee, admittedly knowing the material conditions and presence of a pile of cinders who

attempts to board a moving engine with a vessel of water in his hand, must be considered as appreciating the danger and assuming the risk although at the time he may have forgotten the existence of the cinders; and this is so, even if the employer was negligent in allowing the cinders to remain. There being no violation of any safety statute, the common-law defense of assumption of risk is not eliminated in such a cause by the Employer's Liability Act." *Jacobs* v. *Railroad Company*, 241 U. S. 244.

The plaintiff, "an experienced employee, admittedly knowing the material conditions" assumed the risk.

10. The court erred in restricting the number of instructions. "It is the right of the parties to have the jury instructed on the law applicable to the case, clearly and pointedly, so as to leave no reasonable ground for misapprehension or mistake. And it is the duty of the judge, when requested, to give in charge any requested instruction which is correct as a proposition of law and applicable to the issues." 11 Enc. Pl. & Prac. 213. "The parties have a right to indicate, by written requests, the points upon which they respectively desire the jury to be informed as to the law." *Archer et al.* v. *Sinclair et al.*, 49 Miss. 343, sec. 793, Code 1906, Hemingway's Code, sec. 577.

11. Even if liability could have been established which is denied, the verdict is grossly excessive. Plaintiff was not permanently injured, and only lost seven days. He worked more than a year after receiving the injury, performing the same work, drawing more pay, and worked frequently overtime. He resigned on account of drunkenness and then sued for the alleged injury.

*A. Vick Robinson* and *Anderson, Voller & Kelly,* for appellee.

The duty of the master in cases similar to the case at bar, has been defined by the supreme court of the United States in *Union Pacific* v. *O'Brien,* 40 Law. Ed. 771, as follows: "The general rule undoubtedly is that a railroad company is bound to provide suitable and safe material and structures in the construction of its road and appurtenances, and if, from a defective construction thereof, an injury happened to one of its servants the company is liable for the injury sustained. The servant undertakes the risks of the employment as far as they spring from the defects incident to the service but he does not take the risks of the negligence of the master itself. The master is not to be held as guaranteeing or warranting absolute safety under all circumstances, but it is bound to exercise the care which the exigency reasonably demands in furnishing proper roadbed, track and other structures, including sufficent culverts for the escape of water collected and accumulated by its embankments and excavations." But counsel say plaintiff had used the switch numerous times that night; had gone in on the switch track immediately before he was injured. We repeat what we have already said, there is no testimony to show that plaintiff had touched the switch, either that he did or did not, and we say that if he had thrown the switch fifty times that night and the switch lamp was burning, it is all the greater reason for his assuming that it was still burning and indicated the switch stand when he came out of number six switch.

As to counsel's contention that if the light was out the defendant had no notice of it, we answer Grayson had knowledge of the condition of that switch lamp. According to his testimony he was charged with the duty and responsibility of ascertaining the condition of

these lamps and keeping them in fit and proper shape. When Grayson inspected this lamp a few hours before this injury he necessarily found the condition of the switch lamp and found that it did not have enough oil in it to run through the night, if indeed it had any at all. If Grayson did not inspect it, he failed to perform his duty and we pass this over with the observation that switch lamps went out from a variety of causes and even attempt to leave the impression with the jury that the oil was stolen from this lamp. Unfortunately for this view there is no testimony and the court excluded this naked and unsupported hypothesis. In the case of *Brown* v. *Y. & M. V. R. R. Co.*, 41 So. 383, this court said: "The court will not go beyond the case shown to imagine that the trouble might have been from an unforeseen cause, such as a freshet, storm, felonious tampering with the rails, "etc."

We deny that plaintiff was the first person to ascertain the defective condition of the lamp. It may be true, as we have stated already, that plaintiff was the first person to discover light being out; this was but evidence of the unfitness and improper condition of the switch lamp and was but the natural effect of an antecedent cause and that cause was Grayson's failure to inspect and put the lamp in fit and proper shape.

So we say that the master had full knowledge of the condition of this lamp and if we are in error as to this we say that failure to have the knowledge that an inspection would disclose is equally culpable and defendant is liable in either event. It matters not which horn of the dilemma is taken, defendant is impaled and cannot escape.

We are in perfect accord with the cases of *Railroad Co.* v. *Barrett*, 166 U. S. 617; *Looney* v. *Metropolitan R. R. Co.*, 200 U. S. 480; *Hough* v. *R. P. R. R. Co.*, 100 U. S. 218" (and other cases cited). Counsel cite the case of *Hooper* v. *Railroad Co.*, 60, 98 Miss. 82. In this

case a brakeman, whie engaged in making a coupling on a car in attempting to withdraw his hand, caught his glove in a sliver of steel that had been broken off and projected down from under the side of the link and his hand was crushed. The court said in its opinion on page 829, which is cited by opposing counsel that:

"In the case at bar no attempt was made to show actual knowledge on the part of the master. In order to show constructive knowledge, it is necessary for appellant to show, not only that the defect could have been discovered by a reasonably careful inspection of the link but the master had an opportunity, in the exercise of reasonable diligence to have made such an inspection. In order to show that the master had such an opportunity for inspection, it was necessary for him to show either that the defect in the link existed at the time it was furnished by the master, or, in event it became defective after it was so furnished, that the defect had been in existence for a length of time sufficient to have afforded appellee, in the exercise of reasonable diligence, and opportunity to inspect it. Both of these facts can of course, be established by circumstantial evidence in the same manner that any fact may be so established."

According to defendant's own witness, Grayson, he both had the opportunity to and did inspect this lamp less than twenty-four hours before the injury and according to his testimony he would necessarily have ascertained the condition of this lamp that it did not have sufficient oil to run through the night. Therefore we say, in the language of Judge Smith in the Hope case:

"The defect had been in existence for a length of time sufficient to have afforded the railroad company, in the exercise of reasonable diligence an opportunity to inspect it." *Miss. Central Co. v. Bennett*, 111 Miss.

163; *Lumber Co.* v. *Garner,* 11 Miss. 814, and *Seaboard Air Line Railway* v. *Horton,* 233 U. S. 492, are all in accord with the Hope case just considered and relate to the necessity of notice or opportunity for notice of the defects.

Counsel cite case of *Armour* v. *Hahn,* 111 U. S. 313, on the proposition that the master must furnish reasonably safe structures and places for his servants to work. This case has no possible application to the intant case, as in that case, Hahn was, himself, engaged and employed in erecting the building, and its safety depended upon him and his fellow employees.

Plaintiff did not assume the risk.—Plaintiff did not assume the risk under the facts in this case. *North Pac. Co.* v. *Everett,* 38 La. Ed. 373; *Gila, etc., Co.* v. *Hall,* 58 Law. Ed. 524; *Vickery* v. *N., etc., Co.,* 89 Atl. 277. When and under what conditions does an employee engaged in interstate commerce, and whose case therefore is referable to Federal Employers' Liability Act, assume the risk of his employment? Under this statute the employee, so far as the assumption of risk is concerned is in the same attitude that he would be in a case where the common-law doctrine of assumption of risk is relied on, excepting those cases where Safety Appliance Acts are violated. The leading case in this country since the enactment of this Federal Employer's Liability Statute is the case of *Seaboard Air Line R. R. Co.* v. *Horton,* 223 U. S. 492, 58 Law. Ed. 1062, which case is referred to in the brief of opposing counsel. There are a number of cases decided by the supreme court of the United States both prior and subsequent to the enactment of the statute, which relate to assumption of risk and we will set out some of these cases later on in this discussion.

1. Was plaintiff injured by defendant's negligence?
2. If so, did plaintiff assume the risk of negligence?

3. Did plaintiff by his own negligence contribute to his injury?

To these inquiries an affirmative answer was given by the jury as to the first and third questions but the jury decided that the plaintiff did not assume the risk of injury. It seems that the jury were incorrectly instructed, in the respect that the defendant was held to absolute responsibility in furnishing safe instrumentality, without regard to reasonable care. The court through Judge Pitney, held:

"The distinction between assumption of risk and contributory negligence involves the notion of some fault or breach of duty on the part of the employee; and since it is ordinarily his duty to take some precaution for his own safety when engaged in a hazardous occupation, contributory negligence is sometimes defined as a failure to use such care for his safety as ordinarily prudent employees in similar circumstances would use. On the other hand, the assumption of risk, even if the risk be obvious, may be free from any suggestion of fault or negligence on the part of the employee. The risks may be present, notwithstanding the exercise of all reasonable care on his part. Some employments are necessarily fraught with danger to the workmen, danger that must be and is confronted in the line of his duty. Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These, the employee, is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that

an ordinary prudent person under the circumstances would have observed and appreciated them. Citing: *Choctaw, etc., Co.* v. *McDade,* 48 Law Ed. 96; *Schlemner* v. *Buffalo Co.,* 55 Law Ed. 596; *Texas, etc., Co.* v. *Harvey,* 57 Law Ed. 582; *Gila Valley, etc., Co.* v. *Hall,* 232 U. S. 94.

Continuing: "When the employee does know of the defect and appreciates the risk that is attributable to it, then if he continues in the employment without objection, or without obtaining from the employer or his representatives an assurance that the defect will be remedied, the employees assumes the risk even though it arises out of the master's breach of duty." *Yazoo & Mississippi Valley R. R. Co.* v. *Wright,* 59 Law Ed. 277.

Another case which we think is illuminating on the same point is *Illinois Central R. R. Co.* v. *Porter,* 207 Fed. 313. The denial of a motion for directed verdict is assigned as error, on the ground that the risk which resulted in decedent's injuries was the usual and ordinary risk incident to the method of employment, and that the assumption of such risk is not abrogated by the Federal Employers' Liability Act. There was no error in refusing a peremptory instruction. In *So. Ry. Co.* v. *Gadd,* 207 Fed. 277, we held that even at common law the employee did not assume the risk of the employers' negligence from an unusual and unexpected method of operation, that is to say not incidental to the ordinary method. Evidence that the work was being done at the time in question in the usual and ordinary way was not evidence that negligent conduct such as charged in this case was the usual and ordinary method of doing the business. The natural inference would be that such negligence of a fellow trucker was outside the usual and expected. The risk of such negligence was not, in our opinion, assumed by decedent, and this without reference to any construction

of the Employer's Liability Act. The defendant's
requests based upon the theory of such assumption of
risk, wetre, we think, properly refused as not supported
by a proper construction of the testimony in that
respect." *Union P. R. R. Co.* v. *O'Brien,* 40 Law Ed.
766; *Rowland* v. *Chicago, etc., Co.,* 135 N. W. 156;
*T. & P. Ry. Co.* v. *Archbald,* 42 Law Ed.; See, also,
*T. & P. Ry. Co.* v. *Behymer,* 47 Law Ed. 905; *Gentzkow*
v. *Portland Ry. Co.,* 102 Pac. 614. Counsel cite the case
of *Baltimore & Ohio Railroad Co.* v. *Randle,* 109, U. S.
478, 27 Law Ed. 1003. We find however on examination
of this case that the facts are entirely dissimilar.

The case of *Y. & M. V. R. R. Co.* v. *Mullins,* decided
in 1919, by United States supreme court, cited by
Counsel announces a well-known principle of law which
we are frank to concede but has no application to the
facts in the instant case. Counsel cite *Butler* v. *Frazee,*
211 U. S. 459, 53 Law Ed. 281. The court said in this
case: "But when the conditions are constant and of
long standing and the danger is one that is suggested by
the common knowledge which all possess, and both the
conditions and the dangers are obvious to the common
understanding, and the employee is of full age, intelli-
gence and adequate experience and all these elements
of the problem appear without contradiction from the
plaintiff's own evidence, the question becomes one of
law for the decision of the court."

Much stress is laid by counsel on page 28 of the brief
on *Jacobs* v. *Railroad Co.,* 241 U. S. 229. The Jacobs
case presents a very different state of facts from the
case at bar. But counsel argue on page 31 of their
brief that: "Plaintiff assumed the risk of any insuffi-
cient lighting for he was thoroughly familiar with all
conditions in the yards and knew that switch lights
would occasionally become extinct, and cite 4 Labatt on
Master and Servant, section 1352 in support of this
contention.

We do not think that the testimony in this case establishes such a frequency of happening of switch lights being unlighted as to constitute "a normal incident of the employment," but rather in the language of counsel that "the switch lights would occasionally become extinct."

Labatt on page 3782 of same work in further considering this principle says: "Such a principle obviously has no application to cases in which it is shown that conditions like those which caused the injury, were as a matter fact, exceptional rather than normal." The case of *I. C. R. R. Co.* v. *Swisher,* 61 Ill. App. 611, cited in counsel's brief in the note to the foregoing section of Labatt's, presents a very different situation from the one at bar. The fireman in the Swisher case knew of this general condition, viz; that lamps were not supplied for switches, though his knowledge did not relate to or extend to a particular switch and he had no opportunity to observe the particular switch and the court held he assumed the risk of using this particular switch. In the case at bar the conditions are reversed, plaintiff knew of this general condition, viz: that all switch stands were equipped with lamps and these lamps were kept burning at night, except in those occasional instances where the lamps went out, that the safe and successful operation of defendant's trains on those switches required that the lamps be kept burning at night.

The case of *Kirbo* v. *So. Ry.,* 89 S. E., cited by counsel, we think peculiarly applicable to the case at bar. The facts sufficiently appear from that part of the opinion which we deem pertinent and shall set out:

"Bearing in mind these rulings, this court, in its former decision of this case (16. Ga. App. 49, 84 S. E. 491), held that the jury should be allowed to pass upon whether or not the employee, after discovering the insufficiency of light, assumed an extra risk by under-

taking to perform his duties as a switchman. We held that this would be a question of fact for determination by a jury (assuming from the allegations in the petition that lights were burning when the plaintiff began to work), and that the question whether he assumed the extra care due to performing his dangerous duties in darkness or imperfect light would depend on how long the darkness or insufficient illumination existed immediately prior to the injury and upon the discovery of the insufficiency of the light was first made by him, and also upon his location at the time the light failed, and whether, under the exigencies of the situation, it was then possible for him to remove himself from the danger zone to a place of safety, or whether he was necessarily so engrossed in the efficient and proper discharge of his duties as to render him oblivious to a partial failure of the light.''

We will not undertake to set out the remainder of this opinion but that part we have cited supports fully plaintiff's contention in the case at bar.

As to counsel's seventh proposition: ''Defendant was not obligated to keep the switch lighted at every moment during the night.''

The case of *Armour* v. *Hahn,* cited by counsel to sustain this position has reference to a stituation where the instrumentality of place is constantly changing its form, where a building is being constructed and the construction work being committed to the responsibility of the injured party and his fellow servants. This rule is both rational and just and any other would impose a hardship upon the master and make him an insurer, which under the law he is not. We have already discussed this authority.

Counsel says on page 41: ''The unlighted switch lamp is not the proximate or even the remote cause of plaintiff's injury.

As we undertand the law relating to proximate cause this is generally a question of fact for determination by the jury. Counsel are here confusing again the question of contributory negligence with that of assumption of risk.

Again they say: "If plaintiff had used this light for the purpose it was intended to be used, he could have seen the switch stand several feet away." If this be true, and we do not at all concede that the duty devolved upon plaintiff to go around with a little hand signal lantern looking for obstructions, in the natural area of his operations, his failure to do this at this time would only constitute contributory negligence on his part and this would only operate to diminish the amount of damages under the Federal Employer's Liability Statute.

Again they say: "Even without a lantern or a light it was not so dark that he could not see the switch stand, when he was ten or fifteen feet from it immediately before he jumped from the side of the car."

And the plaintiff himself testified on page 47 that it was so dark that he did not see the switch. On page 102 he testified the little hand lantern did not throw sufficient light for him to see the switch; that if it had, he would not have run into it.

We deny counsel's statement that: "Plantiffs own evidence shows that he could see switch stand without any light ten or fifteen feet away." His testimony is just to the opposite effect. Counsel says: "The duty of the defendant was simply to see that the switch stand was reasonably safe for the purpose it was erected and used, that is to indicate by the lights when the switch was open and when it was closed." And further: "The master's obligation to furnish reasonably safe and suitable instrumentalities is limited by the use for which the instrumentalites are designed," citing 3 LaBatt on Master and Servant, section 921.

We will not set out the entire section quoted in Counsel's brief, but direct the attention of the court to the same authority and same section. In the case of *Morrison* v. *Burgess, etc., Co.*, 47 Atl. 412, cited by counsel, the principle is illustrated; the court said in the course of its opinion: "The case does not show either that the defendants intended for the plaintiff to use this elevator as he did, or knew, or were in fault for not knowing, that he was likely to do so. A person is not in fault for not knowing particular facts, unless circumstances exist which would put a man of average prudence upon inquiry.

And no such circumstances were shown. If the jury had found that the defendants ought to have known that he would use it, they could then say a trap was set for him when the defendants left the gutter as they did; for that would be finding that they suffered a dangerous situation to exist upon a part of their premises which they knew their servants were accustomed to use in their work."

We wish to say further in this contention, however, that it is plainly evident from the testimony in this record that the purpose of the switch light was likewise for the safety of the men engaged in the service of the defendant in and around it. We submit that a fair consideration of the testimony of the witnesses for plaintiff and defendant, establishes the fact that the safety of the men required that those switch lamps be kept burning in the nighttime.

Instruction Number 1: "The court instructs the jury for the plaintiff that if you believe from the testimony in this case that the defendant company negligently failed to have the switch light at number six switch lighted on the morning of September 14th, 1917, and further believe from the evidence that because of such failure on the part of the defendant to have such switch lamp lighted and as a proximate and direct

result thereof plaintiff was injured unless he knew of the condition or by the use of ordinary diligence could have known of the danger before he was injured, then you will find for the plaintiff and assess his damages in such sum as you believe the evidence justifies, not to exceed the sum sued for.''

Instruction Number 2: ''The court instructs the jury for the plaintiff that the plaintiff in this case only assumed the ordinary and customary dangers incident to his employment and the court charges the jury that the plaintiff did not assume any risk arising from the negligence of the defendant, if you believe from the testimony that the defendant was negligent, unless he knew of the condition, or by the use of ordinary diligence could have known of the danger before he was injured.''

The following instructions were granted the defendant: Instruction number one (1) granted defendant is as follows: ''The court instructs the jury for the defendant that the defendant can only be held responsible to Dees for injuries received through its negligence, and the burden of proving such negligence is upon Dees to the same extent that it is upon any other plaintiff seeking to recover on the ground of negligence. Before the plaintiff can recover from the defendant by reason of the fact that switch number six was not lighted the burden of proof is on him to show that the defendant knew or could have known of the existence of the fact that said lamp was not lighted, if such was a fact, and unless the plaintiff, Dees, had shown by a preponderance of the evidence that the defendant knew, or could have known by the exercise of reasonable diligence, that the lamp in question was not lighted at the time Dees claims to have received his injuries, then it is the duty of the jury to find for the defendant.''

Instruction Number Two (2) granted defendant is is as follows: "The court instructs the jury for the defendant that, if they believe from the evidence that the lamp on number six switch was inspected on the evening before the plaintiff claims to have been injured, by a suitable and competent inspector and was found to be in perfect condition and was properly lighted, and that within a short time before plaintiff claims to have been injured something unknown and unforeseen had caused the light in said switch to go out, then the defendant would not be guilty of negligence as it would have exercised due diligence for the purpose of ascertaining whether the lamp was in reasonably good order for the purpose for which it was being used. If the defendant exercised such diligence as any ordinarily reasonable man would exercise in matters of that kind then it is not liable. The defendant was not an insurer of the plaintiff, Dees, regardless of its own diligence. All the law required of defendant with reference to keeping said lamp in reasonbly good repair for the purpose for which it was being used, was to exercise ordinary care and diligence to see that it was in good and proper order and use such diligence as a reasonably careful and prudent man would use under the circumstances. If defendant did this and the lamp on said switch from any cause "went out" then the defendant is not liable as the plaintiff assumed the risks of such hazards if any there were, and if the jury so believe from the evidence they will find for the defendant."

Instruction number three (3) granted defendant is as follows: "The court instructs the jury for the defendant that negligence by the railroad company is essential before the plaintiff is entitled to recover, even as much as one cent. In the operation of a railroad absolute safety is unattainable and the defendant railroad in this case was not an insurer of the safety of plaintiff while he was engaged in switching cars in

the yards. Negligence is the failure to do what a resonable and prudent person would ordinarily have done under the circumstances of the situation, or doing that which such a person under the existing circumstances would not have done. Negligence always has relation to the circumstances in which one is placed and what an ordinarily prudent man would do or omit to do in such circumstances. Wherefore, unless you believe from a preponderance of the evidence that plaintiff Dees, has shown that the defendant failed to exercise ordinary care to furnish a reasonably safe place for the plaintiff to perform his duties, as under like conditions others engaged in similar or well regulated business are in the habit of furnishing the defendant railroad company is not liable.''

Instruction number four (4) which was granted defendant is as follows: ''The court instructs the jury for the defendant that when the plaintiff, Dees, entered the service of the defendant he assumed the extraordinary risks incident to his employment, if such risks there were, or risks caused by the defendant's negligence, if any, which were obvious or fully known and appreciated by him. Therefore, if they believe from the evidence that the defendant negligently failed to light said lamp on switch number six and that the plaintiff knew or could have known, by the exercise of reasonable diligence the location of said switch and that it was not lighted, then he assumed the risk of such danger, and if he was injured thereby the verdct of the jury will be for the defendant.''

Instruction number five (5) which was granted the defendant is as follows: ''The court instructs the jury for the defendant that it was the duty of the plaintiff in conducting his work to exercise reasonable care to avoid injuries to himself. He was under a great obligation to provide for his own safety from such dangers as were known to him, or such as were dis-

cernable by ordinary care on his part, as the defendant was to provide a reasonably safe place for him to work. He should have taken ordinary care to learn of the dangers which were likely to beset him in the switching service in which he was engaged. He had no right to alight from a train in a place which he knew was dangerous or unsafe or which he might have known was dangerous or unsafe by the exercise of reasonable diligence. Therefore, if you believe from the evidence that the plaintiff knew or could have known by the exercise of reasonable care and caution could have known that said switch was there unlighted and that he would probably strike said switch stand, and was injured thereby, then the defendant is not liable as the plaintiff assumed the risk of such injury.''

It will be seen upon a reading of these instructions granted the plaintiff and defendant that the defendant was granted instructions more liberal than they were entitled to under the law.

As to the court's action in refusing to consider defendant's instructions ''A,'' ''B,'' ''C,'' ''D,'' ''E,'' ''F,'' ''G,'' ''H,'' and ''I,'' set out in defendant's special bill of exceptions, on page 10 et seq: This ruling of the trial judge was harmless error: 1st. Because the defendant had already been granted instructions fully and fairly presenting its defense. 2nd. Instructions ''A,'' ''E,'' ''F,'' ''G,'' and ''H,'' are covered in the instruction granted the defendant and are but repetition. 3rd. Instructions ''B,'' ''C,'' ''D,'' and ''I,'' do not announce correct principles of law; are not accurate statements of the law of negligence as applied to this case.

We submit that the testimony that what we have set out in details hereinbefore establishes that the use the plaintiff was putting the switch lamp to was the natural and logical use that a switchman so situated

would put it to.  As to counsel's citation of LaBatt, Vol· 3, page 2457, we wish to say that the general principle announced on this page has the limitations imposed upon it by the distinguished author that will be found on page 2462 which is a continuation of the same section, to-wit: 921.

As to counsel's criticism of plaintiff's instruction number 2 counsel confuse ordinary and extraordinary risks incident to employment.  We feel that this instruction is not in conflict with any of the authorities cited.  This criticism, however, is hypercritical as any orror whatever in the announcement as to ordinary and customary dangers is cured by the statement in the instruction that the plaintiff would assume the risk arising from the negligence of the defendant either if he knew of that negligent condition or by the use of ordinary diligence could have known of the danger before he was injured.  See *Boldt* v. *Ry. Co.*, 245 U. S. 441.

As to counsel's contention that: "Verdict of the jury grossly excessive.  Jury influenced by prejudice, passion and irrelevant and incompetent evidence and the remarks of the judge with reference to his inflexible rule relating to the number of instructions to be given."

The testimony in this case shows that the plaintiff suffered what is technically known as a double hernia or what is generally known as a rupture on both sides, and that he received this injury as the result of defendant's negligence.  Plaintiff's testimony was to the effect that he has suffered a great deal on account of this injury and suffers yet, that it has been necessary for him to wear a truss which confines the hernia on each side.  The testimony further shows that the plaintiff was confined to his bed some eight or ten days and that after he became able to get out, that he undertook again his duties in defendant's yards,

and that he was able to perform that part of his duties which called for physical exertion and effort only by the assistance of his fellow workers; that he was unable again to do any heavy work. The surgeon who testified as to plaintiff's condition, testified, that hernias are serious conditions, that they are permanent without operation, that an operation does not always remove the condition, though in a majority of cases it does; that an operation would probably entail danger to his life and that there is no chance for plaintiff's recovery without operation; that his condition would be a drawback in doing work and the testimony now shows that plaintiff is unable to do work requiring much physical effort. We deny the imputation that the jury that assessed plaintiff's damages was actuated either by passion or prejudice or influenced by the remarks of the court with reference to the limitation upon the instructions.

Wherefore we say in conclusion that the verdict of the jury is supported by the testimony and is commensurate with the injury, and should accordingly, be affirmed by this honorable court, and the judgment based upon it should be affirmed by this honorable court.

Smith, C. J., delivered the opinion of the court·

This is an· appeal from a judgment for damages alleged to have been sustained by the appellee while in the employ of the appellant by reason of its negligence.

In September, 1914, and for some years prior thereto, the appellee was in the appellant's employ as an engine foreman in the appellant's yard at Vicksburg, charged with the duty of "making up all trains . . . that had to be switched in the Vicksburg yards." There are fifty-two switch tracks in this yard, each controlled by a lever extending from the track to a switch stand about six feet therefrom. On the top of each

of these stands is an oil lamp. These switch stands, including the lamps on the top thereof, are about three feet high. The lamps which burn oil are inspected each day by an employee of the appellant whose duty it is to keep them filled with oil and burning. Two of the opposite sides of each lamp are of green glass, and two are of red, so that on two sides the light therefrom appears green, and on the other two red, indicating according to the direction in which they are turned whether the switch is open or closed.

The appellee is an expert switchman, was familiar with the appellant's yard, and knew the location of each switch therein. On the early morning of September 14, 1917, while it was yet dark, he stepped off of a slowly moving car of an interstate train which his crew was then engaged in switching in order to signal the engineer, and, after taking about two steps, fell over the stand of switch No· 6, the lamp of which was not burning, and was injured. The appellee passed this switch stand a short time before he was injured, and the lamp thereon was then burning, though this fact seems not to have attracted his attention; the switch having been turned by another member of the crew.

The employee of the appellant in charge of the switch lamps testified that he inspected, filled, and lighted the lamp of switch No. 6 the day before the appellee was injured. One of the members of appellee's switch crew testified that he examined this lamp immediately after appellee fell over it, and that it had no oil in it. The appellee had a small lighted lantern at the time he was injured, but stated that he was not using it to locate the switch stand, but was intending to use it in signaling the engineer, and that his failure to see the switch stand was caused by the absence of the light which should have been burning thereon. There was evidence, and the appellee admitted, that these switch

lamps would occasionally go out without fault on the part of the appellant or of the person in charge thereof, and that when the going out of a lamp attracted the attention of a member of the switching crew he would relight it both for his own protection and that of the appellant.

At the close of the evidence, the presiding judge announced that all of the issues involved in the case could be set forth in not exceeding eight instructions for each side, and that he would not consider a greater number if tendered him. He passed on eight instructions, in addition to a request for a peremptory instruction, tendered him by the appellant, but declined over the appellant's objection to consider several other instructions tendered him by it, which instructions were afterwards embodied in a bill of exceptions.

The errors assigned bring under review: (1) The refusal of the appellant's request for a peremptory instruction; (2) the granting of the appellee's first and second instructions: (3) the refusal of the appellant's sixth, seventh, and eighth instructions; (4) the refusal of the court below to pass on more than eight instructions tendered by the appellant; and (5) the amount of the verdict.

First. The ground on which the appellant sought to obtain a peremptory instruction is that the going out of the switch light was one of the ordinary risks of the services in which the appellee was engaged, and consequently was assumed by him when he entered the appellant's employ.

The risks which a servant may incur in any employment fall naturally into one or the other of two classes: First, the ordinary risks of the service, that is, those which are not created by the master's negligence and which remain after he has used due care to remove them; and, second, the extraordinary risks or those which are created by the master's negligence.

It is probably a universal rule that the servant merely by entering the service of the master assumes the ordinary risks of the service, and if he is injured solely because of them he cannot recover. But at common law, and under the federal Employers' Liability Act (U. S. Comp. St. sections 8657-8665), which controls here, risks created by the master's negligence are not assumed by the servant unless with an actual or constructive knowledge thereof and appreciation of the danger therefrom he voluntarily enters or continues in the employment of the master. In the case at bar, the appellee assumed the risk of the switch lamps going out without fault on the part of the appellant; but his complaint here is, and the jury believed, that the lamp of the switch stand over which he fell went out because the appellant's employee in charge thereof negligently failed to keep it filed with oil, so that the question of whether or not the appellee assumed the risk thereof cannot arise unless he had, before he was injured, either actual or constructive knowledge of the fact that the lamp was out, and whether he had this knowledge, construing the evidence most strongly for the appellant, was a question for the determination of the jury. The request by the appellee for a peremptory instruction was properly refused. *Seaboard Air Line Railroad* v. *Horton,* 233 U. S., 492, 34 Sup. Ct., 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475.

Second. The appellee's instruction No. 1 is as follows: "The court instructs the jury for the plaintiff that if you believe from the testimony in this case that the defendant company negligently failed to have the switch light at No. 6 switch lighted on the morning of September 14, 1917, and further believe from the evidence that because of such failure on the part of the defendant to have such switch lamp lighted and as a proximate and direct result thereof plaintiff was injured, unless he knew of this condition, or by the use of

ordinary diligence could have known of the danger before he. was injured, then you find for the plaintiff and assess his damages in such sum as you believe the evidence justifies, not to exceed the sum sued for.''

The appellant's objection thereto is that it violates the rule ''that the master's duty in respect to his instrumentalities is restricted to seeing that they are reasonably safe for the performance of the functions for which they are designed,'' for the reason that the lights were placed on the switch stand by the appellant, not for the purpose of enabling its employees to locate the switch stands, but for the purpose of indicating whether the switches were open or closed.

One answer to this contention, assuming for the purpose of the argument that the use for which these lights were intended by the appellant is material, is that, while it may be that the primary purpose for which the lights were placed on the switch stands was to indicate whether the switches are open or closed, it appears also from the evidence that this was not the sole purpose they were intended to serve, but another was that the location of the switch stands might thereby be disclosed to the appellant's employees at work in the yard.

But the use for which these lights were intended by the appellant is not here controlling. The appellant's switching crews in the discharge of their duty must necessarily walk between the tracks in its yard, so that it was the duty of the appellant to exercise reasonable care, to keep the space between these tracks reasonably safe for that purpose. These switch stands unmarked by lights would undoubtedly be a menace to the safety of these switchmen on dark nights, because of their liability to fall over them as did the appellee in the case at bar, though it may be that if they had never been marked by lights their presence between the tracks would only have added to the care which the switchman must observe in walking between the tracks at night, as to

30. 121—Miss.

which we are not now called upon to express an opin-
ion, for the obstructions which the appellant placed
between the tracks were not mere switch stands, but
switch stands on which there were lights which it pro-
posed to keep constantly burning and to avoid which less
care was required on the part of its employes than
would have been rquired of them to avoid unlighted
switch stands. The lights were integral parts of the
switch stands, and the appellant's employees would
naturally associate one with the other and trust to the
lights in locating and avoiding the switch stand. The
placing of the lights on these switch stands by the ap-
pellant whatever its    primary purpose in so doing
may have been, was in effect an invitaton to its employees
to use them for the purpose of locating and avoiding
the switch stands, a use for which they were suitable
and to which from their very nature the appellant
must have known its employees would put them. It
follows, therefore, that the appellant by placing the
lights on the switch stands became charged with the
duty of exercising reasonable care to keep them burning,
so that its employees would not be misled by their
absence in locating and avoiding the switch stands.

The appellee's instruction No. 2 is in accord with
our views of the law as hereinbefore set forth in dis-
cussing the appellant's request for a peremptory instruc-
tion, and is therefore correct.

Third. The appellant's instruction No. 6 was properly
refused, one sufficient reason therefor being that it was
sought thereby to charge the jury, when the law is to
the contrary, that an employee assumes a risk created
by his employer's negligence merely because he had
as good an opportunity as his employer of knowing of
its existence.

No error was committed in refusing the appellant's
instruction No. 7, for the substance thereof was given
in charge to the jury over and over again for both

sides; that is, that a recovery by the appellee de-pended upon his having fallen over the switch stand because the lamp thereon was not lighted.

The appellant's instruction No. 8, was also prop-erly refused because of the erroneous charge therein that—If the plaintiff ''had been working in the yards where such switch was located and knew that such switch stand No. 6 was there and had known if for years prior to the alleged accident, then plaintiff assumed the risk of such danger, if any there was from said unlighted switch.''

The appellee admitted knowing the location of all of the switches, but the trouble here is that he fell over the switch stand in the dark not knowing that he was then in its vicinity, which fact would have been disclosed to him had the lamp been burning.

Fourth. Trial courts are required to, and should only, grant instructions sufficient in number and charac-ter to guide the jury in determining the issues involved in the case on trial, and they have the right to limit the number of instructions to be considered by them ac-cordingly. *Mabry* v. *State,* 71 Miss. 716, 14 So. 267; *Waldrop* v. *State,* 98 Miss. 567, 54 So. 66. This number cannot be an arbitrary one applicable to all cases alike, but must depend in each case upon the number of issues therein involved. In the case at bar the five instructions granted the appellant fully covered all of the issues it was entited to have submitted to the jury; consequently, the court committed no error in declining to pass on the others tendered to it.

Fifth. The appellee, as a result of his injury, is suffering from a double hernia which will be permanent unless relieved by an operation which may or may not be a success, and which, according to the evidence, will be attended with danger to life. He is still suffering pain at intervals, is compelled to wear a truss with

its accompanying inconvenience and his capacity for work has been materially reduced. The verdict of fifteen thousand dollars which is claimed by the appellant to be excessive, is large; but on the evidence we cannot safely say that it was the result of passion, prejudice, or corruption on the part of the jury.

*Affirmed.*