## BROWN'S ADM'R v. NORFOLK & W. RY. CO.

(District Court, W. D. Virginia. April 19, 1926.)

**1. Commerce �找27(8)—Employee, killed while carrying coal taken from car of commercial coal to kitchen of work train, held employed in interstate commerce (Employers' Liability Act, § 1 [Comp. St. § 8657]).**

Plaintiff's intestate was a member of a mason's crew employed in repairing bridges, etc., along the track of defendant's railroad, used in both interstate and intrastate commerce, and which used a train as headquarters and in moving from one place of work to another. The duty of plaintiff's intestate included keeping the kitchen and dining cars supplied with coal and water. While the train, in moving to a new place of work, was stopped at an intermediate station, he crossed some tracks and filled a sack from a car of commercial coal there standing, and while on his way back was struck and killed by a passing train. He had been forbidden by the foreman to take coal from commercial cars, and such was a minor rule of the company, not in its printed rules, but its violation was not a serious offense. *Held* that, regardless of the purpose for which he took the coal, he was, when killed, employed in interstate commerce, within Employers' Liability Act, § 1 (Comp. St. § 8657).

**2. Commerce ⟳27(5)—Employee in interstate commerce does not lose that status within Employers' Liability Act, if during rest period he does something not required in performance of his duties (Employers' Liability Act [Comp. St. §§ 8657–8665]).**

A railroad employee, employed in interstate commerce, does not lose that status, within the meaning of Employers' Liability Act (Comp. St. §§ 8657–8665), because during a rest period, and when injured or killed, he was engaged in an act which, though not required in performance of his duty, was in intent not inconsistent with his duty to resume work at the appointed time.

At Law. Action by W. L. Brown, administrator of the estate of W. E. Brown, deceased, against the Norfolk & Western Railway Company. On motion by plaintiff for new trial. Denied.

Wm. H. Werth, of Tazewell, Va., for plaintiff.

Joseph M. Sanders, of Bluefield, W. Va., and S. K. Funkhauser, of Roanoke, Va., for defendant.

McDOWELL, District Judge. At the conclusion of all the testimony in the case, I ruled that the plaintiff's decedent was at the time of his injury employed in interstate commerce, but directed a verdict for the defendant. A motion for a new trial has been availed of to carefully again consider both the question as to the alleged negligence of the defendant and whether or not the decedent was at the time of his injury employed in interstate commerce. The first question need not be discussed, but the second is in one respect new. There was as to this question no conflict in the evidence. The problem is solely as to the meaning of the Employers' Liability Act (35 Stat. 65; 36 Stat. 291 [Comp. St. §§ 8657–8665]).

A stipulation made by the parties, and an agreed statement by the court reads as follows:

"It is stipulated and agreed as follows:

"First. That the defendant, the Norfolk & Western Railway Company, was engaged in interstate commerce at the time of the injury in question.

"Second. It is further stipulated and agreed that the mason's crew, of which the plaintiff's decedent was a member, had been, previous to the injury in question, assigned to work on a bridge in West Virginia, at or near Bluestone Junction, which bridge was regularly used in both intra and inter state commerce, and the crew was on its way to Bluestone Junction to perform their said duties on said bridge at the time of the accident.

"Third. It is further stipulated and agreed that the plaintiff, W. L. Brown, is the duly qualified and authorized administrator of the estate of W. E. Brown, the decedent named in the notice of motion.

"By the Court: At the request of counsel for defendant, it is, however, to be distinctly understood, that the defendant does not stipulate that the decedent was employed in interstate commerce at the time of his death."

[1] Brown, the decedent, was a member of the mason's crew, and the one who held the seemingly coveted position of "kitchen flunkey." It was his duty to keep the kitchen car and also the dining car of the camp train supplied with water and with coal. This duty he was expected to perform early in the morning, and as soon as this work had been performed he had to join the remainder of the crew for service as a mason's helper. The camp train and the mason's crew had been for some days before the date of the accident at Graham, and did not leave there until nearly noon of that day. There was a supply of coal at Graham, near the camp train, and, as the work of the crew was expected to be and was finished in the forenoon, Brown did not join the mason's crew at work at all during the morning of the day of the accident, which occurred on November 12, 1924. He stayed at the camp cars all

morning, and the foreman thought that he then got the coal for the kitchen and dining cars; but neither the foreman nor any other witness knew whether or not in fact Brown did get the coal for these two cars while at Graham.

At about noon of the day of the accident the camp train, on the way to Bluestone Junction, was temporarily halted at Flat Top yard, in order that the train crew could use the engine in shifting some freight cars on the yard. During this stop Brown, having provided himself with a sack, walked south from the camp train across two tracks, to some cars loaded with commercial coal standing on a siding, which was the third track from the one the camp train was on. After filling the sack with coal, and as he was starting or about to start back to the camp train with a bushel or more of coal in the sack, he was struck by an east-bound passenger train going at about 35 miles per hour, on the track next north of the siding on which the coal cars were standing.

The journey that was being made by the mason's crew was, I think, a necessary incident of and a preliminary part of the work to be done by the crew at Bluestone Junction. The members of the crew were paid for the time spent on the journey, exactly as if then engaged in actual work. Certainly they were then employed, and as the work to be done (Pedersen v. Del., etc., R. Co., 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153) was of interstate character, this preliminary part of it was of the same character. See Erie R. Co. v. Winfield, 244 U. S. 170, 173, 37 S. Ct. 556, 61 L. Ed. 1057, Ann. Cas. 1918B, 662; Lamphere v. Oregon, etc., R. Co., 196 F. 336, 116 C. C. A. 156, 47 L. R. A. (N. S.) 1; Atlantic, etc., R. Co. v. Williams (C. C. A.) 284 F. 262. It follows that Brown, being a member of the crew, was employed in interstate commerce while waiting at Flat Top yard (Missouri, K. & T. Co. v. U. S., 231 U. S. 112, 119, 34 S. Ct. 26, 58 L. Ed. 144), unless his act in going across the tracks after coal changed his status. One may be employed while not actually engaged in the labor he is employed to perform. A section hand, who momentarily leaves his work of reballasting an interstate track to get a drink of water, or to light his pipe, does not, of course, cease to be employed in interstate commerce.

In North Carolina R. Co. v. Zachary, 232 U. S. 248, 260, 34 S. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159, the fireman, who was killed, had oiled and prepared his engine for the completion of an interstate journey, and while waiting for the scheduled time of departure walked across some tracks towards his boarding house. The opinion (232 U. S. 260, 34 S. Ct. 309) reads: "Again it is said that, because deceased had left his engine and was going to his boarding house, he was engaged upon a personal errand, and not upon the carrier's business. Assuming (what is not clear) that the evidence fairly tended to indicate the boarding house as his destination, it nevertheless also appears that deceased was shortly to depart upon his run, having just prepared his engine for the purpose, and that he had not gone beyond the limits of the railroad yard when he was struck. There is nothing to indicate that this brief visit to the boarding house was at all out of the ordinary, or was inconsistent with his duty to his employer. It seems to us clear that the man was still 'on duty,' and employed in commerce, notwithstanding his temporary absence from the locomotive engine. See Missouri, Kansas & Texas Ry. Co. v. United States, 231 U. S. 112, 119 [34 S. Ct. 26, 58 L. Ed. 144]." See, also, Van Buskirk v. Erie R. Co. (C. C. A.) 279 F. 622.

The fact that Brown went into a place of danger does not per se differentiate the case here from the Zachary Case. The fireman there went into a place of danger, and (as was assumed) on a personal errand, and was killed. The one point wherein the case here does differ from the Zachary Case arises as follows: Brown had previous to the date of injury been forbidden by the foreman of the mason's crew to get coal from cars loaded with commercial coal, and he knew that in so doing he was violating one of the company's rules. However, while the fact that Brown was at the time and place of his injury a trespasser may have high importance in respect to the plaintiff's right to recover, I do not see that such fact deprived Brown of his status as one employed at the time of injury in interstate commerce. The evidence indicates that for doing what Brown was doing a mild reproof was the utmost that could have been expected. Brown had, so far as appears, never before violated the rule, and there is nothing in the evidence on which to base an assumption that his violation was ground for discharge. With cases where by the rules of the employer a violation of some rule is declared to ipso facto discharge the offender, and with cases where the rules declare certain violations to be cause for discharge, I have no present concern. The violation by Brown was of a minor rule, one not

found in the written rules, and for a breach of which, if discovered, an admonition not to repeat the offense would have been the only probable result.

The injury here did not occur after the end of the day's work, but at a period of enforced idleness during the day's work. Brown's undertaking was not, in intent, inconsistent with his duty to be ready to leave the yard on the camp train with the rest of the mason's crew, when the train crew should have finished switching.

[2] The case of Krysiak v. Penn. R. Co. (C. C. A. 3) 270 F. 758, in so far as it relates to the present question, is, I think, discriminable from the case at bar. Krysiak had *finished his night's work* (of interstate character), and was leaving the yard where he worked, when he was killed. In leaving the yard he did not take a safe way provided by the employer, but *for his own convenience* pursued a course across the yard tracks, and the main tracks. It was held that he was not employed in interstate commerce when the injury occurred. The distinction between the Krysiak Case and the Zachary Case seems to be this: After the end of the day's work the act of the employee must be a *necessary incident of his work*, or he is no longer employed within the meaning of the Employers' Liability Act. But, if the act of the employee occurs at a rest interval during the day's work, the status of the employee is not changed, if the act done is, in intent, not inconsistent with the employee's duty to resume his work at the appointed time. See Erie R. Co. v. Winfield, 244 U. S. 170, 173, 37 S. Ct. 556, 61 L. Ed. 1057, Ann. Cas. 1918B, 662.

While the fact that Brown took with him a sack and had put in it a bushel or more of coal affords ground for a reasonable inference that he was getting coal for use in the kitchen and dining cars, I do not believe that the possibility that he was getting coal for his private use in his bunk car is here of importance. Even if such was his purpose, the Zachary Case seems to me to control. Brown was employed in interstate commerce, while getting coal for his own use, as much as Zachary's decedent was while going to his boarding house for his own purposes. Brown's visit to the coal car was in intent not inconsistent with his duty to leave Flat Top on the camp train with the rest of the mason's crew, whether he was after coal for company use or for his own use.

I remain under the belief that Brown was injured while employed in interstate commerce.