CHESAPEAKE AND OHIO RAILWAY COMPANY *v.* RUSSO, ADMINISTRATOR.

[No. 13,097.   Filed October 24, 1928.   Rehearing denied May 28, 1929.   Transfer denied March 19, 1930.   Petition for certiorari to U. S. Supreme Court denied October 20, 1930.]

*Condo & Batton* and *Albert H. Cole*, for appellant.
*John H. Kay* and *Henry M. Dowling*, for appellee.

ENLOE, P. J.—On and for some time prior to June 8, 1925, one Tony Companion was in the employment of appellant as a member of a crew of men working as track repair and track maintenance men on appellant's main line of interstate railroad. On the day named, said crew was working in Grant County, Indiana, and near the station of Converse. The derailment and wrecking of a freight train on appellant's road at the place where the men were working caused the death of said Companion, who was the "water boy" to said crew, and this suit was brought by the administrator of his estate to recover damages resultant therefrom. A trial resulted in a verdict and judgment in favor of appellee, from which this appeal is prosecuted.

Appellant first contends that the complaint upon which this case was tried was insufficient, and that the court erred in overruling appellant's demurrer thereto. The record discloses that, before the submission of the cause to the jury, the appellee, by leave of the court, amended the complaint. After this amendment, was made, no demurrer was filed to the complaint as amended. There is, therefore, no question as to the sufficiency of the said complaint before us. *Travelers'*

*Ins. Co.* v. *Martin* (1892), 131 Ind. 155, 30 N. E. 1071; *Tague* v. *Owens* (1894), 11 Ind. App. 200, 38 N. E. 541.

It is next insisted that the verdict was not sustained by sufficient evidence and that it was contrary to law. In support of this proposition, counsel for appellant say: "There is no evidence showing that decedent, who was about to carry water for a gang of men who were about to reconstruct appellant's track, was engaged in interstate commerce, or work so closely related to interstate commerce as to be a part of it." In this contention, we cannot concur. The evidence shows, without dispute or controversy, that the said "extra gang" was engaged in taking up the old rails of the track of appellant and replacing the same with new rails; that the business of the deceased was to carry water to the men directly engaged in the work of replacing said rails; that he had entered upon his employment on the morning on which he was killed; the records of the appellant company introduced in evidence showed that he had labored three hours on that morning as "water boy." The question then arises: Is a water boy who carries water to the laborers who are actually engaged in work in furtherance of interstate commerce, and who are, therefore, under the protection of the federal Employers' Liability Act (45 USCA §§51-59), entitled to the protection of that act? This "extra gang," as a whole, was engaged in replacing the rails of appellant's track—taking out the old and putting in the new. This was a work in furtherance of interstate commerce. This work, of necessity, was not all of one kind; some laborer or laborers distributed the spikes, others the plates, others placed the rails, others the bolts necessary to fasten rail to rail, while still others did the work of placing the bolts through the plates and rails and then tightening the same. Each and all were contributing their part towards the accomplishment of the end desired—the

laying of a new track to take the place of the old. The deceased was carrying water to these men; he was, in this way, contributing his part towards the accomplishment of the end desired; he had a part in this work the same as the laborer who distributed and laid the new spikes upon the tie where they were to be driven; each of such persons was doing an act which aided other workmen to accomplish their particular task more speedily, and we hold that the work of the said deceased, as a water boy, was so intimately connected with interstate commerce as to be a part thereof. See *Philadelphia, etc., R. Co.* v. *Smith* (1919), 250 U. S. 101, 39 Sup. Ct. 396, 63 L. Ed. 869.

It is next urged that, as the deceased was a member of this repair gang, he knew of the alleged dangerous and defective condition of the track and, therefore, assumed the risk of injury. There is evidence in this record which is sufficient to sustain a finding of the following facts; that, at the place where the derailment of the said train occurred, there was a curve in the track of appellant railroad company; that, at said point, the track of appellant passed under a viaduct carrying the tracks of the Pennsylvania Railroad, and supported by stone pillars on either side; that, in furtherance of the work of said extra gang, the spikes had been removed from every other tie; that many of the ties were old and rotten; that the train which was derailed consisted of 56 loaded cars and a caboose; that the deceased had no part in the work of drawing the spikes from the rails or in removing from thereunder any ties. There is no evidence that he knew the extent to which the spikes had been removed from the rails and ties or that he knew that some of the said ties remaining under the rails were old and rotten. His work was to carry water to the men, and, in doing this work, he was not called upon to inspect the track and to observe and know its condition as to

these matters. There is also evidence that, at a point some distance to the east of the place where these men were working, there had been placed a signal flag or warning to the engineer to "slow down" his train. This was a permanent "slow board" for this curve and viaduct, and the evidence in this case is ample to sustain a finding that the engineer in charge of said train disregarded said "slow board" and approached the curve, the place where these men were working and the place where said track had been weakened by the drawing of spikes, etc., at a speed of 25 to 35 miles per hour, and that when the train had arrived practically at the point where the wreck took place, the engineer, on signal from the foreman of said repair gang to check the speed of the train, suddenly applied the brakes and the derailment followed. The complaint herein alleged, *inter alia*, as one of the acts of negligence, that, at the place where the derailment occurred, "the ties upon which the rails rested were split and decayed; that spikes had been removed from and about the ties and rails of said track; that said rails were not securely and sufficiently spiked and fastened to the ties; . . . that, by reason of the defective and unsafe condition of said track at said place, as aforesaid, a much lower rate of speed should have been maintained by the defendant through its employees in charge of the operation of said train"; and that the appellant should have given notice to said train crew of the condition of said track, and should have required that said train be operated over said track at a low rate of speed. The evidence is ample to sustain the above charge of negligence as to the condition of the said track, at the place of said derailment.

Appellant tendered an instruction covering this charge of negligence, which instruction the court refused to give, and the action of the court is now presented as error, because, appellant says: (1) No

statute or rule of law required the giving of notice to said train crew, or the placing of any flagman at that point to signal the train crew to slow down; (2) there was no evidence that the train crew were ignorant of the condition of the track at that point; and (3) because other trains had passed over this same track between Saturday night and Monday morning when said wreck occurred. We cannot concur in this contention. While there is no statute requiring a railroad company to place a flagman at such place to give warning to the trainmen of the condition of the track, and no statute requiring the giving of orders to such trainmen to reduce the speed of the train, yet, we must remember that the track at that point where these men were working was not in its usual condition, by reason of spikes having been drawn and ties removed. It is fundamental that it is the master's duty to furnish to the servant a reasonably safe place to work. This includes, not only safety so far as machinery and appliances are concerned, but it also imposes upon the master the duty of seeing that the machinery and appliances are used and operated in a reasonable manner. As said by Lord Watson, in *Smith* v. *Baker* (1891), 60 L. J. Q. B. N. S. (Eng.) 683: "It does not appear to me to admit of dispute that, at common law, a master who employs a servant in a work of a dangerous character is bound to take all reasonable precaution for the workman's safety. . . . But, as I understand the law, it was also held by this House, long before the passing of the Employers' Liability Act (43 & 44 Vict. c. 42), that a master is no less responsible to his workmen for personal injuries occasioned *by a defective system of using machinery* than for injuries caused by a defect in the machinery itself." (Our italics.) And, in commenting upon the case of *Bartonshill Coal Co.* v. *Reid* (1860), 3 Macq. H. L. Cas. (Scot. App.) 266, Lord Herschell, who sat with Lord Watson, noticed that Lord Cranworth had there

observed that the injury was "the result of a defective system in not adequately protecting the workmen." In the case of *Louisville, etc., R. Co.* v. *Hanning, Admr.* (1892), 131 Ind. 528, 31 N. E. 187, 31 Am. St. 443, it was averred in the complaint that it was dangerous and hazardous to attempt to repair cars while they were standing upon the sidetrack, without having certain signals and flags so placed as to warn those engaged in running and switching trains, not to run cars or locomotives upon the sidetrack where said cars were being repaired, and "that it was the duty of defendant, and said Contant, as said general foreman, to cause signal flags to be placed, to warn trainmen not to run cars or locomotives upon said sidetrack" while workmen were there engaged at their work of repairing cars, but that the defendant negligently failed to place, or cause to be placed, any such signal flag. The trial court, by an instruction, submitted to the jury the question as to whether or not the defendant company was negligent in not placing a signal flag at the head of the switch to warn the trainmen of the danger attendant upon their running a train or switching cars upon said track, and it was held that the court did not err in giving said instruction; that if the placing of such flag would have made said switch—the place of work—reasonably safe for the workmen, and that, without such flag, such place was dangerous to the workmen, then it was the duty of defendant therein to place such flag.

The second and third objections are also without merit. The duty which appellant owed to the deceased to exercise reasonable care in keeping the place where deceased was working reasonably safe for him, by so ordering and controlling the movement of trains over said portion of said track, so weakened and dangerous, was a primary one, and whether those in charge of said train knew of the dangerous or unsafe

condition of said track or not would not relieve appellant from doing its duty in the matter. If these men knew of the condition of the track and that it was unsafe for trains running at high speed and yet did not reduce the speed of the train, their negligence in that regard would be the negligence of the company. It was appellant's duty to establish reasonable rules and regulations governing the operation of its trains; the track was weakened and unsafe and it knew it, and it knew that reasonable care for the safety of its servants required that the speed of trains at this place should be reduced, hence the duty to issue orders, or to put a flagman there to flag trains and cause them to reduce speed. *Evansville, etc., R. Co.* v. *Holcomb* (1894), 9 Ind. App. 198, 36 N. E. 39. The fact that trains had gone over this track during Saturday night, Sunday and Sunday night without having been derailed, with no flagman at said point and no orders to trainmen to slow down, cannot relieve appellant of any duty it owed towards the deceased. The instruction tendered and refused would have taken from the jury the question of appellant's negligence in this matter, and the court did not err in refusing to give the same.

Appellant also presents as being error the action of the court in giving instruction No. 1 of those given by the court of its own motion. We need not pass upon the question as to the correctness of said instruction No. 1, for, if the same was not a correct statement of the law, the error in giving it was clearly invited by counsel for appellant when they tendered and requested the court to give their instruction No. 16, which contained the same declaration as to the law as that of which complaint is now made.

Complaint is also made of the action of the court in admitting certain testimony concerning the work of the

deceased outside of and in addition to his earnings with appellant. In this there was no error.

Appellees were entitled to prove the full earning capacity of the deceased from all legitimate sources at the time he was killed.

We find no error in other instructions of which complaint is made. The verdict, while large, is not such as to impress us that it, as to amount, is the result of passion or prejudice.

Other alleged errors are presented, but they are of no controlling influence and need not, therefore, be considered.

Affirmed.