ILLINOIS CENT. R. CO. *v.* HUMPHRIES.

(In Banc. Oct. 28, 1935. Suggestion of Error Overruled Feb. 3, 1936.)

[164 So. 22. No. 31708.]

E. C. Craig, of Chicago, Ill., **Burch, Minor & McKay**, of Memphis, Tenn., **A. M. Pepper**, of Lexington, and **Barbour & Henry**, of Yazoo City, for appellant.

462

Mondou v. New York, New Haven & Hartford R. R. Co., 223 U. S. 1.

P. P. **Lindholm**, of Lexington, and **J. G. Holmes**, of Yazoo City, for appellee.

Argued orally by **J. F. Barbour** and **C. N. Burch**, for appellant, and by **J. G. Holmes** and **P. P. Lindholm**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellee, as executrix of the will of her husband, Thomas S. Humphries, deceased, brought this action in the circuit court of Holmes county against appellant to recover damages for the death of her husband, an employee of appellant, alleged to have been caused by appellant's negligence while the deceased was performing his duties as head brakeman for appellant. Both deceased and the appellant were engaged in interstate commerce at the time; therefore the Federal Employers' Liability Act, 45 U. S. C. A., sections 51-59, applies. There was a verdict and judgment in the sum of fifty thousand dollars, from which judgment appellant appealed to this court, which affirmed the judgment as to liability and reversed and remanded the cause to be tried on the issue of damages alone. Illinois Cent. R. Co. v. Humphries, 170 Miss. 840, 841, 155 So. 421. Such trial was had, resulting in a verdict and judgment in appellee's favor in the sum of forty-two thousand five hundred dollars. From that judgment, appellant prosecutes this appeal.

The evidence on the two trials which was admitted in connection with that offered and ruled out was to a very large extent substantially the same. A rather full history of the evidence in the case will be found in the opinion of the court on the former appeal. It is deemed unnecessary, therefore, to go into such a history in this opinion.

Appellant contends that under the Federal Employers' Liability Act Humphries' railroad earnings alone are to

be taken into consideration in fixing the damages; that earnings or income from any other business he was engaged in are not to be considered. The argument is that such earnings and income have no relation to interstate commerce, and that therefore, under the Commerce Clause of the Federal Constitution, Congress had no power to legislate with reference to the matter; that it could not go beyond the railroad earnings. We are of opinion that the contention is without merit, although the decision of the Supreme Court of the United States in the Railroad Pension case (Railroad Retirement Board et al. v. Alton Railroad Co. et al., 295 U. S. 330, 55 S. Ct. 758, 79 L. Ed. 1468) gives it some show of reason. The exact question was involved in Chesapeake & Ohio Ry. Co. v. Russo, 91 Ind. App. 648, 163 N. E. 283, and decided against appellant's contention. An application for certiorari in that case was made to the Supreme Court of the United States. The application was denied. 282 U. S. 846, 51 S. Ct. 25, 75 L. Ed. 750. The petition for certiorari, however, shows on its face that no question was presented to the Supreme Court of the United States in reference to outside earnings; the petition was based on alleged error relative to an instruction on assumed risk. We think the decision of the Indiana court is sound. No other decision has been brought to our attention where the question was involved.

Under the Federal Employers' Liability Act, the assumption of risk is a complete defense in an action based thereon. Jacobs v. Southern Ry. Co., 241 U. S. 229, 36 S. Ct. 588, 60 L. Ed. 970; Chesapeake & Ohio R. Co. v. De Atley, 241 U. S. 310, 36 S. Ct. 564, 60 L. Ed. 1016; Louisville & N. R. Co. v. Russell, 164 Miss. 529, 144 So. 478; Yazoo & M. V. R. Co. v. Dees, 121 Miss. 439, 83 So. 613. Under the act contributory negligence is not a complete defense; it is only a defense to the quantum of recovery, it can be used by the defendant only in mitigation of damages. To illustrate: Where the plaintiff is guilty

of fifty per cent of the negligence and the defendant is guilty of fifty per cent, the plaintiff is only entitled to recover one-half of his proven damages. Roberts on Federal Liabilities of Carriers (2 Ed.), section 858, and authorities cited.

On the first trial appellant's defense was assumption of risk and contributory negligence in mitigation of damages. Assumption of risk was pleaded, contributory negligence was not. Nevertheless, under Kansas City Southern Ry. Co. v. Jones, 241 U. S. 181, 36 S. Ct. 513, 60 L. Ed. 943, appellant had the right and did rely on contributory negligence in mitigation of damages, although it was not pleaded. At appellant's request the court in a very awkward instruction submitted that question to the jury. On the second trial the question of liability being out of the way, the only issue was the quantum of damages. Appellant pleaded contributory negligence in mitigation of damages. The court sustained appellee's objection to certain evidence, later set out, offered by appellant to show contributory negligence; that action of the court is one of the principal grounds upon which appellant asks a reversal of the judgment.

Appellant's line of railroad from Durant to Aberdeen is known as the Aberdeen branch. The entire line is ballasted with cinders. On the 9th of November, 1931, the deceased, as head brakeman for appellant, was on a trip from Aberdeen to Durant. He was killed in the railroad yards at Ethel. He was standing on the step in the rear of the tender of the engine with his feet protruding over the edge of the step. The cinders were piled so high that his feet struck them, and he was raked off under the train and instantly kill. That was the first working trip he had made over the line between the 3d of November of that year and the day he was killed. On both issues appellant introduced evidence tending to show that the deceased knew that the railroad was ballasted from one end to the other with cinders, knew that the tracks in

the yards at Ethel were ballasted with cinders; that the ballasting in the yards was done several months before the 3d of November, 1931; that the deceased had worked the yards at Ethel time and again prior to the 3d of November, and knew of whatever dangers there were from the cinders. Appellant's evidence also showed that at the time the deceased was raked off of the step to the tender by the cinders, instead of having hold of the hand-hold convenient for the purpose, he had one arm resting on it, and was waving to some friends with the other. The evidence for appellee was to the effect that the cinders causing the death were placed there between the 3d of November and the 9th of November, therefore Humphries did not know of their existence, because the trip on which he was killed was the first one he had made between those dates.

On the second trial appellant offered the same evidence with reference to when the cinders were put in the yards at Ethel. It was offered, of course, to show contributory negligence. It was ruled out, although the court did admit as pertinent to that issue Humphries' conduct at and immediately before his injury and death.

It is argued on behalf of appellee that the question of whether the dangerous cinder bed was placed there before or after the 3d of November was involved in the first trial, resulting in a judgment for appellee, and is therefore res adjudicata. In other words, on the issue of contributory negligence appellant was confined to the situation and conduct of Humphries at the time of and just before his injury and death. Putting it differently, on the first trial the question of contributory negligence was involved and settled and was out of the case on the second trial, except as stated. Why appellee does not go further and contend that what occurred with reference to his situation and conduct at the time and immediately before his injury and death was not also settled on the first trial against appellant we are unable to under-

stand. If the principle contended for is sound, contributory negligence was entirely out of the case on the second trial. That it was not out of the case, but in it as fully on the second trial as on the first, is settled, so far as this court is concerned, in the case of New Orleans & N. E. R. Co. v. Snelgrove, 148 Miss. 890, 115 So. 394, 395. It was held in that case that upon a reversal and remand to be tried on the question of damages alone "all issues having a bearing on that question are retried, including the negligence and contributory negligence of plaintiff and defendant, respectively." The reversal of the judgment for retrial of the question of damages alone necessarily left open to be tried anew all the elements entering into that question. A new trial on damages could mean nothing else. The fact that some of the evidence relied on by appellant in the first trial as constituting assumption of risk also tended to show contributory negligence does not bar it from use by appellant in the second trial on the latter issue. To hold otherwise would deny appellant a federal right. In Norfolk Southern R. Co. v. Ferebee, 238 U. S. 269, 35 S. Ct. 781, 59 L. Ed. 1303, this question is not directly decided, and still the whole case proceeded on the idea that on the affirmance on liability, and reversal and remand for the assessment of damages alone, all the elements of damages were left as fully open as on the first trial. The opinion of the court, in effect, simply said that. If this court should hold that the first trial closed the door so far as contributory negligence is concerned, how could the contention be answered that under our practice of partial reversal appellant was denied a federal right? We see no answer.

All the judges concur that the proof of earnings is not to be confined to railroad earnings alone. Judges McGowen and Cook and Chief Justice Smith concur with the writer that the testimony offered by the railroad company on the issue of contributory negligence was admissible, and that the court committed reversible error

in excluding it. All of the judges, except the writer, concur in the opinion that the evidence of net profits mentioned in the succeeding paragraph was properly admitted as one among many other features to be placed before the jury, and all the judges except Judge ETHRIDGE are of the opinion that the cautionary instruction requested by the railroad company that profits are not to be taken as the measure of damages should have been given. The writer stands alone upon the proposition that the evidence of net profits was not admissible, and what is said from and after this paragraph is by way of dissent from the prevailing opinion on that particular proposition.

Over appellant's objection the court admitted evidence of net profits made by Humphries from his dairying and farming interests. Net earnings from invested capital and labor of others should be excluded. As stated, Humphries lost his life on the 9th of November, 1931. The evidence on this subject covered the years 1928 to 1931, inclusive; it showed, or tended to show, that Humphries had rather large farming and dairying interests, and that his average net income therefrom for those years was between five and six thousand dollars. Appellant not only objected to such evidence, but requested an instruction from the court, which was refused, in which it sought to have the court inform the jury that profits from Humphries' farming and dairying business were not the measure of damages. Appellee, the widow, during the life expectancy of her husband, and the two childen, during their minority, were entitled to recover only the pecuniary loss which they suffered on account of the death of the husband and father; and in measuring that loss his contributions in the past to their maintenance and support and his probable contributions in the future based on his earning capacity but not on net earnings of his invested capital and the labor of others are to be taken into consideration. It was competent to show the

volume of his different business enterprises, but not the net profits; on the other hand, the railroad company would not be permitted to show that he was operating at a loss. LoSchiavo v. Northern Ohio Traction & Light Co., 106 Ohio St. 61, 138 N. E. 372, 27 A. L. R. 424; Baxter v. Philadelphia & R. Ry. Co., 264 Pa. 467, 107 A. 881, 9 A. L. R. 504; Wallace v. Pennsylvania R. Co., 195 Pa. 127, 45 A. 685, 52 L. R. A. 33; Lombardi v. California St. Ry. Co., 124 Cal. 311, 57 P. 66; Chicago, R. I. & P. R. Co. v. Hale (C. C. A.), 186 F. 626; Pryor v. Metropolitan Street Ry. Co., 85 Mo. App. 367; Homan v. Franklin County, 90 Iowa, 185, 57 N. W. 703; Normandin v. Kansas City (Mo. App.), 206 S. W. 913; Marks v. Long Island R. Co., 14 Daly (N. Y.) 61; Louisville & N. Ry. Co. v. Howard, 90 Tenn. 144, 19 S. W. 116; 8 R. C. L. 473.

Under the above authorities it was proper to show the volume of business and the part Humphries took in its management and supervision and the reasonable value of his services, but not the net profits of the business. Net profits of a business are too speculative; they are subject to too many contingencies; there are unexpected fluctuations, unlooked for competition, changes in habits and modes of living, in sources of supply, increase or decrease in demand, rising and falling markets. Any inquiry into such profits opens a wide field for speculation and fraudulent practices, they could only be arrived at by an investigation of the business with the help of an expert accountant. Such facts are peculiarly within the knowledge of the party conducting the business. For illustration: Suppose the evidence had shown that the dairying and farming businesses were losing ventures each year, and notwithstanding Humphries contributed annually a certain amount to the support of his wife and children, would they be entitled to recover nothing? What period should be taken to ascertain the net profits four years more or less before the death of the decedent? If net profits should be considered on the one side, why not

a losing business on the other? The soundness of these principles is illustrated by the evidence in this case. On direct examination Mrs. Humphries testified that her husband's net income for the four-year period in question from his railroad salary, dairying, and farming interests was an average of five thousand six hundred sixty-five dollars and twenty-seven cents. On cross-examination her husband's income tax returns for the first three years and hers for the last year were produced, showing an average annual net income during the period of only one thousand six hundred thirty-one dollars and eighty-six cents, which she admitted was probably correct.

Appellee relies on Louisville, E. & St. Louis R. Co. v. Clarke, 152 U. S. 230, 14 S. Ct. 579, 38 L. Ed. 422; that decision does not sustain her contention. It holds that it was not error to allow proof of gross not net income, which with the other evidence tended to show the loss sustained by the widow and children. The other evidence concerned age, occupation, ability to labor, and the usual earnings of the deceased derived from invested capital and the labor of others.

Reversed and remanded.

**Ethridge, J.**, delivered a dissenting opinion.

I think the judgment of the court below should have been affirmed. On the former trial of the case the defendant pleaded assumption of risk as a defense to the suit, in addition to the general issue. In this notice under the general issue under the assumption of risk, it was contended that the cinders and clinkers which caused the death of the decedent had been placed upon and along the track as ballast prior to November 3d of the year of the injury, had been so placed along the track for a long period of time, and that the deceased had often been over the track in operating the engine and trains, and was thoroughly familiar with the conditions, and

the danger, if any, existed on said tracks during all this period of time. It produced testimony, on its part, to sustain its contention of the assumption of risk; while the plaintiff produced contradictory evidence upon the facts alleged by the railroad company as a plea of the assumption of risk. The issue was submitted to the jury on conflicting evidence in reference to the condition of the track prior to November 3d of the year in which the death of the decedent occurred, and the jury found against the defendant upon such issues of fact, and the judgment of liability was affirmed by this court. The finding by the jury, and the affirmance by the court, is an adjudication that the facts in regard to the condition of the tracks prior to November 3d, as claimed by the railroad company, did not exist. If the condition contended for by the railroad company existed, then clearly there would have been an assumption of the risk, and consequently no liability, as the assumption of risk is a complete defense under the Federal Employers' Liability Act (45 U. S. C. A., sections 51-59).

When the case was remanded for trial upon the question of damages alone, the railroad company then filed a notice under the general issue of contributory negligence, and sought to prove the same contentions involved in the plea of assumption of risk. And this constitutes the first assignment of error; that the trial court erroneously limited the scope of the evidence under this plea of contributory negligence. The court below admitted evidence of contributory negligence, but refused to permit the inquiry to go behind November 3d of the year of the decedent's death, on the theory that the facts in reference thereto had already been adjudicated, and were res adjudicata.

In my view this ruling was correct. The parties to the suit were each bound by the findings of fact necessarily involved in the verdict and the judgment of the court. There could not be, on the same conditions, facts to nega-

tive assumption of risk on one trial, and a contrary finding by the jury on a second trial, on the same testimony. To permit this would be to destroy all certainty in verdicts and judgments. The authorities, both federal and in this state, sustain this view.

In 34 C. J., page 854, section 1266, it is said: "All defenses to plaintiff's cause of action which were set up and adjudicated are concluded by a judgment for plaintiff, so that they cannot thereafter be urged as against further proceedings upon the same cause of action, or upon the judgment itself, or in further litigation between the same parties upon the same subject matter. Under this rule matters alleged by way· of defense to an action, and fully negatived by the judgment therein, cannot afterward be made the basis of a new action by the former defendant against the former plaintiff, even though in the subsequent action the complaint amplifies the former defense by stating the evidence to prove it. But the rule does not apply to defenses which were not within the scope of the issue litigated in the former action, and which therefore were not considered or decided therein, nor to defenses which were expressly reserved by the court, or which, after having been pleaded, were withdrawn by defendant before judgment or were excluded by the court."

At page 856 of 34 C. J., it is said: "It is a general rule that a valid judgment for plaintiff is conclusive not only as to defenses which were set up and adjudicated, but also as to those which might have been raised; so that defendant can neither set up such defenses in a second action or in further proceedings in the same action, nor can such defenses be used by the former defendant as the basis of a subsequent action against the former plaintiff."

See, also, 8 R. C. L. 962, secs. 438, 446, 451; Pearce v. Rice, 142 U. S. 28, 12 S. Ct. 130, 35 L. Ed. 925; Werlein v. New Orleans, 177 U. S. 390, 20 S. Ct. 682, 44 L. Ed. 817; Fayerweather v. Ritch, 195 U. S. 276, 25 S. Ct. 58,

49 L. Ed. 193; 34 C. J. 817, secs. 1235 and 1236; 34 C. J. 902, sec. 1312; Board of Com'rs of Santa Fé County v. New Mexico, 215 U. S. 296, 30 S. Ct. 111, 54 L. Ed. 202; Gila Bend Reservoir & Irr. Co. v. Gila Water Co., 205 U. S. 279, 27 S. Ct. 495, 51 L. Ed. 801; Jones v. Merrill, 69 Miss. 747, 11 So. 23; Mosby v. Wall, 23 Miss. 81, 55 Am. Dec. 71; Hart v. Livermore Foundry & Machine Co., 72 Miss. 809, 17 So. 769; Oklahoma v. Texas, 256 U. S. 70, 41 S. Ct. 420, 422, 65 L. Ed. 831; Postal Telegraph Cable Co. v. Newport, 247 U. S. 464, 38 S. Ct. 566, 62 L. Ed. 1215; Harvison v. Turner, 116 Miss. 550, 77 So. 528; Johnson Steel Street-Rail Co. v. William Wharton, Jr., & Co., 152 U. S. 252, 14 S. Ct. 608, 38 L. Ed. 429; Cromwell v. Sac County, 94 U. S. 351, 24 L. Ed. 195; National Life & Acc. Ins. Co. v. Prather, 172 Miss. 567, 161 So. 117.

In Oklahoma v. Texas, supra, the court said: ''The general principle, applied in numerous decisions of this court, and definitely accepted in Southern Pacific R. Co. v. United States, 168 U. S. 1, 48, 49, 18 S. Ct. 18, 42 L. Ed. 355 [376, 377], is, that a question of fact or of law distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery or defense in a suit or action between parties sui juris is conclusively settled by the final judgment or decree therein so that it cannot be further litigated in a subsequent suit between the same parties or their privies whether the second suit be for the same or a different cause of action. As was declared by Mr. Justice HARLAN, speaking for the court in the case cited, 168 U. S. 1, page 49, 18 S. Ct. 18, 27, 42 L. Ed. 355: 'This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for, the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if, as between parties and their

privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue and actually determined by them.' ''

In Johnson Steel Street-Rail Co. v. William Wharton, Jr., & Co., supra, 152 U. S. 252, 14 S. Ct. 608, 610, 38 L. Ed. 429, on page 433, the court, speaking through Justice HARLAN, said: ''The whole subject was carefully considered in Cromwell v. Sac County, 94 U. S. 351, 352 [24 L. Ed. 195-197], where it was said: 'There is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Thus, for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defenses actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. If such defenses were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence. The judgment is as conclusive, so far as future proceedings at law are concerned, as though the defenses never existed.' ''

There is also a case note in 38 L. Ed. beginning at page 429, in which many authorities are set forth. In Gila Bend Reservoir & Irr. Co. v. Gila Water Co., supra, 205 U. S. 279, 27 S. Ct. 495, 497, 51 L. Ed. 801, at page 803, the court said: ''It is now contended that, inasmuch as

the question is one of jurisdiction, neither the omission to call attention to the matter in the prior litigation nor the misrecital of fact operates to render the decree in that case res judicata upon the question, but leaves the matter open for present inquiry. Counsel are mistaken. In that litigation the present appellant was the defendant. The property was in the possession of the court, even if held under a prior receivership. The decree directed its sale. It was sold. The sale was confirmed, the deed made, and the property delivered to the purchaser. The appellant at least cannot now question the jurisdiction of the court in that suit, or the title which it conveyed to the purchaser at the sale. A failure to make a defense by a party who is in court is, generally speaking, equivalent to making a defense and having it overruled.

In Southern Pac. R. Co. v. United States, 168 U. S. 1, 18 S. Ct. 18, 27, 42 L. Ed. 355, it was said in the headnotes: "A right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action," a right, question or fact, once so determined, will be taken as conclusively established so long as the judgment of the first suit remains unmodified.

Many other authorities could be cited and quoted from, which in my opinion clearly show that when a matter of fact necessarily involved in a previous litigation has been adjudicated, those facts stand established, and cannot thereafter be disputed by the parties to the suit, and those in privity to them; but such facts may be introduced by the party in whose favor they have been established by judgment, and the opposite party is estopped from thereafter challenging their truth.

It is true that the question of damages was sent back to the court below to be tried over, and all facts bearing on that question which are not judicially established in

a prior decision are subject to proof by either party. But the judgment established facts which remain facts, and such facts cannot be disputed by the other parties to the suit against whom they are established. It would be absurd to say that certain evidence is true in one aspect of the case, and that the same testimony is untrue in another aspect of it. Testimony cannot at the same time be both true and false. When its truth is established in a judicial proceeding, the party against whom it is established is forever bound in that suit, or in any other suit where they come in issue between the same parties to the suit in which they were previously established.

I agree with the views expressed in Judge ANDERSON's opinion, that the plaintiff was not limited in recovery to the earnings of the decedent as an employee of the railroad. His life having been taken while in the employ of the railroad, through its negligence, the plaintiffs were entitled to recover the pecuniary losses sustained by them by reason of his wrongful death, and the elements of recovery for his life are not limited to that service.

On the trial the plaintiff offered evidence showing the amounts of the pecuniary benefits received from the decedent by his wife and children for several years prior to his death, and also evidence of income received from the operation of the various activities in which the deceased was engaged; all of which was introduced for the purpose of establishing, or tending to establish, the ability of the deceased to have continued in the future the pecuniary benefits which he had been accustomed to bestow upon his family.

In this case the death of decedent was instantaneous, and his wife and children were limited to the pecuniary benefits which they had been accustomed to receive, and which he would probably have continued to bestow had he continued to live. In Michigan Central R. Co. v. Vreeland, 227 U. S. 59, 33 S. Ct. 192, 57 L. Ed. 417, Ann. Cas. 1914C, 176, it was held that the liability to certain rela-

tives dependent upon the decedent, which is imposed by the Federal Employers' Liability Act of April 22, 1908, on an interstate railway carrier negligently causing the death of an employee while engaged in interstate commerce, is not limited to cases where death was instantaneous; the right of action thus created being independent of any cause of action which the decedent had, and including no damages which he might have recovered for his injury if he had survived. But the financial benefits which the wife and children might reasonably have expected in a pecuniary way is the measure of damages in an action brought against an interstate railroad carrier under the Federal Employers' Liability Act of April 22, 1908, for the benefit of a widow of an employee killed while engaged in interstate commerce.

In arriving at and determining the pecuniary benefits to which the widow and children are entitled, the occupation, capacity for work, and business enterprise in which he is engaged, are to be considered, not as a measure of damages within themselves, but as tending to show, or to disprove, the ability of the deceased, had he lived, to continue the pecuniary benefits which he was in the habit of bestowing. It was pertinent to determine what his earnings were, and it was legally and logically pertinent, also, to show what the necessary or proper expenses of conducting such business was, to aid the jury in arriving at a correct conclusion. In the case of Louisville, E. & St. L. R. Co. v. Clarke, 152 U. S. 230, 14 S. Ct. 579, 582, 38 L. Ed. 422, it is said: "It is assigned for error that the court below permitted the plaintiff, against the objection of the defendant, to testify as to the income of the deceased previous to his death. It is conceded by counsel that it was competent to have shown the testator's ability and capacity for labor, as well as his skill in his calling. But it is insisted that the evidence as to his income for a particular period was not competent. We are of the opinion that the evidence to which

the defendant objected was properly admitted. It tended, in connection with other evidence, to show the extent of the loss sustained by the widow and children on account of the death of the husband and father. The age of the deceased, his probable expectancy of life, his occupation, his ability to labor, and his accustomed earnings were all proper elements of the inquiry as to the compensation proper to be awarded on account of his death. Wade v. Le Roy, 20 How. [61 U. S.] 34, [15 L. Ed. 813]; Nebraska City v. Campbell, 2 Black [67 U. S.] 590 [17 L. Ed. 271]; District of Columbia v. Woodbury, 136 U. S. 450, 10 S. Ct. 990 [34 L. Ed. 472]; Texas & P. R. Co. v. Volk, 151 U. S. 73, 14 S. Ct. 239 [38 L. Ed. 78]; Board of Com'rs of Howard County v. Legg, 110 Ind. 479, 11 N. E. 612; Hudson v. Houser, 123 Ind. 309, 24 N. E. 243; Collins v. Davidson [C. C.], 19 F. 83; Hall v. Galveston, H. & S. A. R. Co. [C. C.], 39 F. 18; Serensen v. Northern Pac. R. Co. [C. C.], 45 F. 407."

It is difficult to see how the earning capacity of a decedent, had he lived, could be established otherwise than by showing what his income from various sources amounted to. These are not the measure of damages, and the jury were so instructed by the trial court; but they were elements from which the jury, in considering them with other evidence, might find what pecuniary benefits the plaintiffs would likely have continued to receive had the decedent lived. The instructions in the case, in my opinion, properly submitted the law to the jury; and when taken all together, and considered as one announcement of the law, in my judgment properly propounded it. The jury were distinctly advised as to the elements of recovery for which they were authorized to allow compensation, and the instructions as a whole were a safe and accurate guide to them in arriving at the proper legal conclusions. The instructions are too numerous and lengthy to be set out in an opinion, but, as stated, they announce correctly the law applicable to the evi-

dence in the case, and I find no error that would warrant the court in reversing the judgment.

**Griffith, J.,** delivered an opinion specially concurring.

I concur in the judgment of reversal, and am in agreement with the majority in everything, except as to the evidence tendered by the railroad company with respect to the physical condition of the railroad track on and prior to November 3d. In the former judgment of this court, affirming as to liability, it was necessary as a predicate to that adjudication to hold and to adjudicate finally that the facts now relied on by the railroad company did not exist on and prior to the date mentioned; and yet the majority is allowing the railroad on a new trial, upon the issue of damages alone, to show, if it can, that these identical facts did exist. This is to allow a finding upon a given issue of law that certain physical facts did not exist, and upon another issue of law in the same case that the same controverted physical facts did exist. This is beyond me, and I concur with Judge ETHRIDGE upon that point.