### PATSAW v. KANSAS CITY SOUTHERN RY. CO.
#### Civ. A. No. 909.

District Court, W. D. Louisiana, Lake Charles Division.
Sept. 23, 1944.

898

Elmer L. Stewart, of De Ridder, La., for plaintiff.

Thomas F. Porter, of Lake Charles, La., for defendant.

PORTERIE, District Judge.

We quote the "Agreed Statement of Facts" in this case with the dual purpose of making it a part of the finding of facts and a narrative of the case.

"The defendant is a railroad company, engaged in interstate commerce, its railroad running from Missouri, through the states of Arkansas, Louisiana and Texas.

"That the plaintiff, Stacy Patsaw, for more than a month prior to the accident sued on, was a member of a section crew, working for the defendant, and engaged every day in interstate commerce, repairing, replacing and keeping in good order defendant's interstate railroad line.

"That the defendant railroad company had entered into a contract with Eddie Walls, the owner of a truck in De Ridder, Louisiana, to transport members of defendant's section crew from De Ridder, Louisiana, to the scene of the section crew's work on defendant's interstate railroad in the Parish of Calcasieu, State of Louisiana.

"That the section crew was working on the Kansas City Southern Railway between the city of De Quincy and the town of Singer, Louisiana.

"That on the day of the accident complained of, the section foreman, Royer, left De Quincy, Louisiana, for the scene of the work, on a hand car or motor car, with tools which the section crew used in their work.

"That on the day of the accident, the foreman of the section crew, while at the scene of his work on defendant's railroad, some time after the start of the day's work, saw Stacy Patsaw and other members of the crew drive up along the highway, which paralleled the railroad.

"That the section foreman had brought out with him tools sufficient in number to supply the men he brought out from De Quincy, and did not have with him a sufficient number of shovels, spades, picks, drivers, jacks, etc., with which Stacy Patsaw and the other members of the crew could work—that is, the members of the crew that came out in the truck from De Ridder with Patsaw.

"That the section foreman told Patsaw to drive in to De Quincy to the tool house and get the tools mentioned in sufficient numbers for himself and the rest of the crew, and that if he did this, all of the men would be allowed full time for that day.

"That one other member of the section crew was sent in to De Quincy with Patsaw to get the tools.

"That De Quincy was about six or seven miles from the place where the section crew was working on the railroad.

"That the purpose of Patsaw's trip in to De Quincy was to get the necessary tools with which he and the others were to work, and intended to work on defendant's interstate railroad.

"That Patsaw had been on the pay roll of the defendant's section crew for more than a month prior to the accident.

"That, to clarify the situation, although it might have already been stated, Mr. Walls, the privately employed truck owner, in taking Patsaw and a number of others that day for work, never did reach De Quincy, the usual place to which the laborers were brought, but found the railroad company's section crew already at work— the railroad track and the highway being parallel between De Ridder and De Quincy—at a point six or seven miles before reaching De Quincy.

"It is agreed that the approximate total distance between De Ridder and De Quincy is 33 miles.

"That there was a private arrangement between Eddie Walls, owner of the truck, and Stacy Patsaw, whereby Patsaw, for a given consideration, drove the truck with members of the section crew in it, each day from De Ridder to De Quincy, the owner

of the truck not being an employee of the railroad company.

"That at the time of the accident complained of, there was no officer or managing agent or official of the defendant company present with Patsaw in the truck.

"That the man who went with Patsaw from the scene of the work on the railroad by the section crew to De Quincy to get tools was a member of the section crew who had arrived that morning with Patsaw, and who had not on that particular day started work.

"That Patsaw's regular duties, under his employment with Eddie Walls, the owner of the truck, were to take the hands who appeared to be delivered at De Ridder, and deliver them to the tool house in De Quincy, for which service the railroad company paid Eddie Walls."

This is a suit brought by Stacy Patsaw against the Kansas City Southern Railway Company for compensation under the Workmen's Compensation Statutes of Louisiana.

Because the petition shows that the plaintiff's cause of action, if he has one, is exclusively under the Federal Employers' Liability Act, 45 U.S.C.A. § 51, and because of diversity of citizenship of the parties, the case was removed to this court.

We are taking the case on defendant's motion to dismiss because the plaintiff was injured while engaged in interstate commerce, for which there can be no recovery under a state compensation statute.

"That while so employed on the 4th day of March, 1943 at about 8:30 o'clock, petitioner was driving a truck belonging to Eddie Walls on the highway between the points on the Kansas City Southern Railroad, south of the north line of the Parish of Calcasieu, La., when he was going from the job to the tool house at De Quincy where the Kansas City Southern Railroad tools were kept." Article 4, Plaintiff's Petition.

"That petitioner was severely injured about the face and mouth and received several cuts in the face, leaving permanent scars and disfigurement. That there is also glass in his face which causes him to suffer great pain and discomfort at all times. He received a blow on his chin knocking out his two middle front teeth in his lower jaw and fracturing and slivering his lower jawbone. Petitioner's back was injured in the lower part or small of his back in the lumbar region and in the sacrum joint and the vertebrae of his back." Article 6, Plaintiff's Petition.

### Conclusions of Law

█ 1. The purpose of the 1939 Amendment to the Employers' Liability Act was to broaden and make it clear that if an employee is engaged in services (although by themselves intrastate in character), which in any way "further or affect" interstate commerce, he comes within the scope of the Act.

The Federal Employers' Liability Act, 45 U.S.C.A. § 51, was amended in part by Act of August 11, 1939, c. 685, § 1, 53 Stat. 1404, to read as follows: "Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter."

The court in Ermin v. Pennsylvania R. Co., D.C., 36 F.Supp. 936, 940, said: "There are multitudinous decisions raising hairsplitting interpretations as to whether or not the employees at the time of accident were actually engaged in interstate commerce. It was to avoid this difficulty that Congress enacted the Amendment. It was, undoubtedly, the intent of Congress to include within the scope of the Federal Employers' Liability Act all employees, even those performing intrastate services whose employment meets the requirements of the Act. It is no longer subject to doubt that Congress had power to include intrastate employment, which affects interstate commerce, within the scope of the Federal Employers' Liability Act."

"Although activities may be intrastate in character when separately considered, if they have such a close and substantial relation to interstate commerce that their control is essential or appropriate to protect that commerce from burdens and obstructions, Congress cannot be denied the power to exercise that control." National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 37, 57 S.Ct. 615, 624, 81 L.Ed. 893, 911, 108 A.L.R. 1352. "Congress' intent to include any employee who performs services which in any way further or affect interstate commerce is clear."

Edwards v. Baltimore & O. R. Co., 7 Cir., 131 F.2d 366, 369. "The weight of authority is to the effect that the amendment should be liberally construed so as to extend the protection of this act to all employees, any part of whose duties furthers or affects interstate commerce 'in any way'." Agostino v. Pennsylvania R. Co., D.C., 50 F.Supp. 726, 729.

In a state case, Prader v. Pennsylvania R. Co., 113 Ind.App. 518, 49 N.E.2d 387, 390, the court said: "One of the main purposes of this amendment was to eliminate the necessity of establishing that at the moment of his injury the employee was actually engaged in the movement of interstate traffic. Lewis v. Industrial Acc. Comm., 1942, 19 Cal.2d 284, 120 P.2d 886."

■ 2. A section crew member, employed in and actually engaged in furtherance of interstate commerce, who is sent from the scene of his work, on a six mile highway trip to obtain tools with which to carry on his interstate work, is covered by the terms of the Federal Employers' Liability Act, if injured on the trip.

A section crew cannot repair and keep in order an interstate railroad track without tools, and it follows that the getting of tools by a member of the crew, so that he can use them in keeping the track in order, is "directly or closely and substantially" furthering interstate commerce.

An interstate train needs a track in good repair. A track cannot be repaired without tools; therefore, an interstate train could not run on a track, whose track workers had no tools.

An employee who is obtaining necessary tools to work on an interstate track, essential to the movement of an interstate train, performs work essential to the movement of interstate commerce, and which "substantially affects" such commerce.

The case of Prader v. Pennsylvania R. Co., 1943, 113 Ind.App. 518, 49 N.E.2d 387, is almost on all fours with the case now before this court. The facts in that case are thus given by the court:

"On July 29, 1941, the appellant was in the employ of the appellee as a section hand at an average weekly wage of $21.60. His work consisted of repairing and maintaining the road bed and track on a main line of the appellee's railroad, which track was used in interstate commerce * * *.

"It was the custom of the appellee to designate each day one or another of the members of the section gang then working on its tracks as a flagman, whose duty it was to warn his fellow employees of the approach of trains over the track upon which they were then engaged. * * *

"He (the injured section hand) was interrupted in this work by his foreman who instructed him to go to the village of Hanna, Indiana, some six miles distant, for the purpose of procuring a 'rule book' through which he was to familiarize himself with the duties of a flagman and thereby qualify for the occasional service above described. He was directed to make the trip by automobile over U. S. Highway No. 30 * * *. En route the automobile which he was driving collided with another vehicle on the highway and he received the injury complained of * * *."

In holding that the section hand's remedy was exclusively under the Federal Employers' Liability Act, the court said:

"While it is true, in the instant case, that the appellant was not engaged in interstate commerce at the time he was injured, yet a part of his duties as an employee of the appellee was the maintenance and repair of tracks used for the transportation of interstate trains. That such work constitutes employment in interstate commerce is no longer open to controversy. New York Cent. R. Co. v. Porter [1917, 249 U.S. 168, 39 S.Ct. 188, 63 L.Ed. 536]; Pedersen v. Delaware, L. & W. R. Co., 1913, 229 U.S. 146, 33 S.Ct. 648, 57 L.Ed. 1125, Ann.Cas. 1914C, 153; Chesapeake & O. R. Co. v. Russo [91 Ind.App. 648, 163 N.E. 283]; Southern R. Co. v. Howerton, [1914, 182 Ind. 208, 105 N.E. 1025, 106 N.E. 369]; 35 Am.Jur. 865, § 448 and cases cited."

"Thus it would seem that the appellant is squarely within the scope of the Federal Employers' Liability Act as amended in 1939, and the Industrial Board was correct in denying jurisdiction."

In the following cases, involving multifarious relations of the laborer and his railroad employer, the injured railroad employee was held to have been engaged in interstate commerce at the time of his injury: Chesapeake & O. R. Co. v. Russo, 91 Ind.App. 648, 163 N.E. 283, 284; Brown v. Norfolk & W. R. Co., D.C., 12 F.2d 319; Id., 4 Cir., 20 F.2d 133; Id., 275 U.S. 540, 48 S.Ct. 36, 72 L.Ed. 414; Pedersen v. Delaware, L. & W. R. Co., 229 U.S. 146, 33 S. Ct. 648, 57 L.Ed. 1125, Ann.Cas.1914C, 153; Woosley v. Wabash Ry. Co., Mo.App., 274 S.W. 871, 873; Southern Pac. Co. v. Indus-

trial Accident. Comm., Cal.App., 113 P.2d 763; Id., 19 Cal.2d 271, 120 P.2d 880; Skanks v. Union Pac. R. Co., 155 Kan. 584, 127 P.2d 431.

We must sustain the motion to dismiss, for it clearly appears from the petition and the facts that plaintiff's exclusive remedy is under the Federal Employers' Liability Act, not under the Louisiana Workmen's Compensation Statute, and no negligence or jurisdictional fact is alleged in the petition, which would entitle the plaintiff to recover under the federal statute.

Judgment will be signed accordingly.